#0208781

ORIGINAL

FILED
SEP 2 4 2003
U.S. COURT OF FEDERAL CLAIMS

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

INTEGRATED BUSINESS SOLUTIONS, INC.

*Plaintiff,*

v.

UNITED STATES OF AMERICA

*Defendant.*

No.: 03-2222C

**VERIFIED COMPLAINT**

COMES NOW the plaintiff, Integrated Business Solutions, Inc., by and through the undersigned as its counsel and represents as follows:

**JURISDICTION**

1. This Court's jurisdiction over this matter is based on 28 U.S.C. §1491(b) and 31 U.S.C. 3556.

**PARTIES**

2. The plaintiff, Integrated Business Solutions, Inc. ("IBS"), is a corporation organized under the laws of the State of Maryland.

3. The defendant, National Science Foundation ("NSF"), is an independent agency of the United States of America within the meaning of 5 U.S.C. §104 and 40 U.S.C. §102.

## NATURE OF ACTION

4. This case presents a basic question of contract law offer and acceptance:

> May an agency refuse to consider a properly submitted and timely offer that was, by its own terms and the terms of the RFP, available for acceptance for 60 days after it was confirmed?

5. In this case, IBS bid on a government contract for mailroom, reproduction, and related services issued by the National Science Foundation ("NSF") on July 17, 2002. After NSF amended its Solicitation five times, IBS submitted its bid on August 22, 2003. NSF acknowledged IBS's bid as timely and proper.

6. NSF had no discussions with IBS until seven months later, when it met with IBS for a question and answer session on March 6, 2003. During this meeting, IBS clarified and confirmed the terms of its August 22 offer. IBS's confirmed offer was good for 60 days (or until May 6, 2003) pursuant to the terms of its offer and the RFP.

7. Four days later, in a letter dated March 10, 2003, NSF gave all bidders the option of submitting revisions to their pending offers within three days (by March 13), or having their original offers evaluated for award. NSF's letter was silent as to the time,

method, and manner for submitting confirmations of original offers and the consequences, if any, of failing to do so.

8. Prior to the March 13 revision deadline, IBS requested a one-hour extension. NSF informed IBS that its request must be put in writing in order to be considered. NSF did not deny IBS's request outright, nor did NSF suggest that IBS's request for an extension would be interpreted by NSF as a revocation of IBS's pending offer. Therefore, in reliance on NSF's response, IBS submitted an extension request that it might have otherwise avoided had it been informed that its request would place IBS's confirmed offer at risk.

9. Although NSF set forth no procedures for the time, method, or manner of confirming original offers, when IBS delivered its revisions, it informed NSF that if its extension request were denied, NSF should, instead, evaluate IBS's pending August 22 offer for award.

10. Ten days later, NSF disqualified IBS's revisions as late. NSF also disqualified IBS's pending August 22 offer. The reasons NSF has given for disqualifying IBS's August 22 offer have changed over time. However, all are contrary to basic contract law, in violation of NSF's own Solicitation, and unsupported by the factual record.

11. Therefore, IBS respectfully requests declaratory and injunctive relief requiring NSF to evaluate IBS's pending August 22 offer, to pay IBS's costs and attorney's fees, and such other relief as the Court may deem just and proper.

## STATEMENT OF FACTS

12. On July 17, 2002, NSF issued Solicitation No. CPO-0200006, a competitive Request for Proposals for facilities management services (the "Solicitation"). The anticipated services included mailroom, reproduction, warehouse, and related services.

13. The Solicitation (Section F2) described a three-year contract for services commencing on November 15, 2002, and expiring on November 14, 2005.

14. The Solicitation (Sections F2 and H8.5) also described an incentive program that permitted the winning company to earn up to four additional contract years. The incentive program is based on the company's performance and its subsequent consent to perform for the additional periods.

15. The Solicitation (Section A1) also states that NSF intends to award the contract based on the offers originally submitted. It reads: "[T]he Government intends to evaluate proposals <u>and award a contract</u> without discussions with offerors (except for clarifications as described in FAR 15.306(a)). <u>Accordingly, the offeror's initial proposal should contain the offeror's best terms from a price and technical standpoint</u>." (Emphasis added).

16. The Solicitation (Section A1) also incorporates FAR 52.215-1(f)(4), which reinforces this point. Therefore, all bidders submitted their original proposals with the

understanding that their original offers would be the basis for contract award.

17. After NSF amended its Solicitation five additional times, IBS submitted a timely and proper offer on August 22, 2002. NSF acknowledged that IBS's offer was timely and properly submitted.

18. NSF had no further discussions with IBS for seven months until, on March 6, 2003, IBS participated in an oral question and answer session with NSF officials. In that session, IBS clarified and confirmed the terms of its August 22 offer. IBS's confirmed offer was valid for 60 days (or until May 6, 2003) pursuant to the terms of its offer and the RFP.

19. Four days later, on March 10, 2003, NSF sent a letter to IBS (the "March 10 letter") stating that IBS would be given the option within three days (by March 13, 2003), to submit final proposal revisions. That letter also gave IBS the option of having its August 22 offer evaluated for award.

20. NSF's March 10 letter set forth in detail the requirements for submitting final proposal revisions. However, the only sentence discussing original offers does not appear until two entire paragraphs after NSF's discussion of proposal revision deadlines. The March 10 letter also introduces Amendment #6 of the Solicitation. The last paragraph of the March 10 letter reads:

> You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. _If no_

> *revisions are made to your original offer, confirm that the offer remains unchanged.* Attached are CPO-0200006, Amendment No. Six, and additional questions *for your consideration* as you prepare your FPR. (Emphasis added).

21. The letter is silent as to the time, method, and manner for submitting confirmations of original offers and the consequences, if any, of failing to do so. Specifically, no deadline is set for IBS to again confirm its August 22 offer. The letter is also silent regarding the form that confirmations must take and to whom confirmations must be given. It is similarly silent as to the consequences, if any, of failing to confirm by a certain date and time.

22. NSF's March 10 letter also included three questions IBS could consider if it elected to revise its offer. However, the letter made it clear that IBS was not required to answer them.

23. Amendment #6 of the Solicitation was also attached to the March 10 letter. Amendment #6 shifted the contract's projected three-year period of performance forward four and a half months. However, the contract's three-year performance period remained well within the seven-year commitment contained in IBS's August 22 offer. The incentive periods also shifted forward four and a half months.

24. On March 13, 2003, before the revision deadline expired, IBS requested a one-hour extension. NSF replied that in order for it to consider this request, IBS must put its request in writing. NSF did not deny IBS's request outright, nor did NSF suggest that IBS's request for an extension would be interpreted by NSF as a revocation of its confirmed August

22 offer. Therefore, in reliance on NSF's response, IBS submitted an extension request that it might have otherwise avoided had it been informed that this request would place IBS's confirmed offer at risk.

25. In reliance on NSF's response, IBS duly submitted a written extension request prior to the revision deadline. Although NSF had set forth no procedures for confirmation of IBS's August 22 offer, when IBS delivered its revisions, it informed NSF that if its extension request were denied, NSF should, instead, evaluate IBS's pending August 22 offer for award.

26. NSF denied IBS's extension request by letter dated March 20, 2003. NSF also stated that IBS's pending and confirmed August 22 offer was ineligible for further evaluation because it did not address Amendment #6, or answer the three questions attached to NSF's March 10 letter.

27. The next day, in a telephone conversation with NSF, IBS objected to this decision and requested a clarification. At NSF's request, IBS detailed its objections in a letter dated that same day.

28. In its telephone conversation and letter of March 21, 2003, IBS noted that NSF's March 10 letter gave IBS the right to have its August 22 offer evaluated for award. IBS also noted that NSF's Solicitation did not require IBS to address Amendment #6, or to answer the three questions attached for IBS's consideration. IBS requested a meeting with NSF to discuss the matter.

29. On March 25, 2003, by letter, NSF repeated the rationale contained in its March 20 letter and declined to meet with IBS.

30. IBS filed a timely agency protest on March 28, 2003, alleging that NSF's refusal to evaluate IBS's August 22 offer was arbitrary, capricious, and in violation of the express terms of NSF's own Solicitation.

31. NSF denied IBS's protest on April 17, 2003. It offered three grounds for its decision, two of which were introduced for the first time:

a. IBS's late revisions allegedly revoked its pending August 22 offer. NSF made this new allegation despite the fact that IBS expressly asked to have its August 22 offer evaluated for award if its extension request were denied.

b. IBS allegedly failed to confirm its August 22 offer. NSF made this new allegation despite the fact that IBS confirmed its August 22 offer during the March 6 question and answer session, and again when it delivered its revisions to NSF. And

c. IBS's August 22 offer did not address Amendment #6. NSF repeated this allegation despite the fact that: (1) IBS's August 22 seven-year

offer clearly covered the amended three-year performance period continued in Amendment #6; and (2) NSF's March 10 letter expressly allowed original offers to be considered for award without addressing Amendment #6.

32. IBS filed a timely protest with the General Accounting Office ("GAO") on April 28, 2003, noting that NSF's actions were contrary to established contract law principles, a violation of NSF's own Solicitation, arbitrary, capricious, and unsupported by the law or factual record.

33. NSF submitted its Administrative Report and Memorandum of Law on May 28, 2003. In its Memorandum of Law, NSF conceded that the applicable legal standard required IBS to express its <u>intent</u> to revoke its August 22 offer before its August 22 offer could be deemed revoked.

34. In its June 7, 2003, Response, IBS pointed out that NSF's own version of the facts demonstrated a repeated and explicit intent by IBS <u>not</u> to revoke its August 22 offer.

35. The GAO upheld NSF's actions on July 9, 2003, essentially adopting NSF's rationale.

36. IBS filed a timely Request for Reconsideration with GAO on July 18, 2003.

37. The GAO denied the Request for Consideration on September 23, 2003.

**COUNT ONE**

(NSF Failed to Follow The Terms of Its Own Solicitation

Regarding Amendment #6)

38. IBS adopts and incorporates by reference all the facts set forth in Paragraphs 1-37 of this Verified Complaint as if fully set forth herein.

39. NSF is obligated to include in its Solicitation information required to be in a bidder's proposal and the factors that will be used to evaluate offers. FAR §§ 15.203(a)(3) and (4). NSF is also required to evaluate proposals solely on the factors specified in the Solicitation. FAR § 15.305(a).

40. NSF disqualified IBS's August 22 offer from further consideration because it allegedly did not address the four-month shift in the contract term contained in Amendment #6. However, NSF ignored the fact that this four-month shift was well within the seven-year commitment contained in IBS's August 22 offer. Moreover, nowhere does the Solicitation require IBS's offer to address Amendment #6 and NSF's March 10 letter expressly allowed IBS's original August 22 offer to be evaluated without further revision.

41. Therefore, NSF imposed requirements that were not contained in the Solicitation and that were contrary to the express terms of its own March 10 letter. These actions denied IBS a substantial chance of award in violation of applicable law.

## COUNT TWO

(NSF Failed to Follow The Terms of Its Own Solicitation
Regarding the Attached Questions)

42. IBS adopts and incorporates by reference all the facts set forth in Paragraphs 1-37 of this Verified Complaint as if fully set forth herein.

43. NSF is required by law to include in its Solicitation information required to be in a bidder's proposal and the factors that will be used to evaluate offers. FAR §§ 15.203(a)(3) and (4). NSF is also required to evaluate proposals solely on the factors specified in the Solicitation. FAR 15.305(a).

44. NSF disqualified IBS's August 22 offer from further consideration because it allegedly did not address three questions attached to NSF's March 10 letter. However, NSF's March 10 letter presented these questions solely for IBS's "consideration." Moreover, nowhere does the Solicitation require IBS's offer to address these questions and NSF's March 10 letter expressly allowed IBS's original August 22 offer to be evaluated for award without further revision.

45. Therefore, NSF imposed requirements that were not contained in the Solicitation and that were contrary to the terms of its own March 10 letter. These actions denied IBS a substantial chance of award in violation of applicable law.

## COUNT THREE

(NSF Engaged in Unequal Treatment of IBS)

46. IBS adopts and incorporates by reference all the facts set forth in Paragraphs 1-37 of this Verified Complaint as if fully set forth herein.

47. NSF is required by law to achieve full and open competition in its procurements, 41 U.S.C. § 253(a)(1)(A), and not to engage in conduct that favors one bidder over another. FAR § 15.306(e)(1).

48. NSF disqualified IBS's August 22 offer from further consideration because it did not submit a revised proposal addressing the four and a half month shift in the contract's term and three questions attached to its March 10 letter.

49. However, nowhere does the Solicitation require IBS to submit a revised proposal and NSF's March 10 letter expressly allowed IBS's August 22 offer to be evaluated for award without further revision.

50. Therefore, NSF's action in requiring IBS to submit a revised proposal constituted unequal treatment of IBS's offer and denied IBS a substantial chance of award in violation of applicable law.

**COUNT FOUR**

(NSF's Treatment of IBS's Offer As Not Confirmed Was Arbitrary and Capricious)

54. IBS adopts and incorporates by reference all the facts set forth in Paragraphs 1-37 of this Verified Complaint as if fully set forth herein.

55. NSF disqualified IBS's August 22 offer because IBS allegedly did not confirm it. However, NSF ignored the fact that IBS repeatedly confirmed its August 22 offer. IBS confirmed its offer during the March 6 question and answer session, just seven days before the revision deadline, making it valid for an additional 60 days. It confirmed the August 22 offer again at the time it delivered its revisions, and repeatedly thereafter. Thus, NSF had before it a confirmed offer, within its 60-day acceptance period, fully capable of being accepted. See PBM Construction, Inc., B-271344, May 8, 1996, 96-1 CPD ¶ 216 (where an original, valid offer, still within its 75-day acceptance period, was followed by an unsuccessful revision attempt, but was ruled fully capable of being accepted by the government).

56. Therefore, NSF's actions are arbitrary, capricious, and unsupported by the law or factual record and denied IBS a substantial chance of award.

## COUNT FIVE

(NSF's Treatment of IBS's Offer As Revoked Was Arbitrary and Capricious)

51. IBS adopts and incorporates by reference all the facts set forth in Paragraphs 1-37 of this Verified Complaint as if fully set forth herein.

52. NSF's disqualified IBS's August 22 offer because IBS allegedly revoked that offer. However, NSF ignored IBS's repeated expressions of intent not to have its August 22 offer revoked and to have it evaluated for contract award. IBS expressly notified NSF of this intent at the time it delivered its revisions, and repeatedly thereafter.

53. Therefore, NSF's actions are arbitrary, capricious, and unsupported by the law or factual record and denied IBS a substantial chance of award.

## COUNT SIX

(NSF's Actions Violated the Competition in Contracting Act)

57. Plaintiff adopts and incorporates by reference all the facts set forth in Paragraphs 1-37 of this Complaint as if fully set forth herein.

58. NSF's actions in imposing unwritten deadlines, unduly restrictive conditions, and unsupported eligibility requirements in violation of the terms of its own Solicitation and applicable law is a restraint of free and open competition in violation of the Competition in Contracting Act, 41 U.S.C. § 253(a)(1)(A).

59. Therefore, NSF's actions denied IBS a substantial chance of award in violation of applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court:

a. Enter judgment in favor of IBS for declaratory and injunctive relief and against NSF; and

b. Order that IBS's August 22, 2002 offer be fairly evaluated for contract award in Solicitation No. CPO-0200006; and

c. Enjoin NSF from failing to evaluate fairly IBS's August 22, 2002 offer for contract award in Solicitation No. CPO-0200006; and

d. Order NSF to pay IBS's costs and attorney's fees; and

e. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

INTEGRATED BUSINESS SOLUTIONS, INC.

By: ______________________

Keith Calhoun-Senghor, Esq.
Counsel of Record for Plaintiff
1429 Madison Street, N.W.
Washington, D.C. 20011
Tel.: (202) 425-4968
Fax: (202) 291-4891

September 23, 2003

**VERIFICATION**

I, Carlton Joseph, Executive Vice President and Chief Operating Officer of Integrated Business Solutions, Inc., state that I have read the foregoing Verified Complaint and certify under penalty of perjury that the allegations therein are true and correct to the best of my knowledge, information, and belief.

Carlton Joseph
Executive Vice President &
Chief Operating Officer
Integrated Business Solution, Inc.

Date: September 23, 2003