**INTEGRATED BUSINESS SOLUTIONS, INC.**
9320 Annapolis Road · Suite 200 · Lanham, MD 20706 · (301) 459-9100 · FAX (301) 731-6285

March 28, 2003

Mr. Bart Bridwell
Contracting Officer
National Science Foundation
Division of Contracts, Policy & Oversight
4201 Wilson Boulevard, Room 475
Arlington, Virginia 22230

Subject: Protest of NSF Decision Finding IBS's Current and Revised Proposals "Ineligible for Further Consideration" (Solicitation No. CPO-0200006, "Facilities Management Services")

Dear Mr. Bridwell:

This letter is a timely, formal protest of the decision by the National Science Foundation ("NSF") to rule both the timely existing proposal, and the revised proposal, of Integrated Business Solutions, Inc. ("IBS") "ineligible for further consideration due to late submission."

I. <u>NSF Has No Basis Under the Solicitation or the Law for Suddenly and Arbitrarily Refusing to Continue to Consider the Properly Submitted Original Proposal of IBS.</u>

A. <u>NSF is Acting Arbitrarily and Contrary to Its Own Instructions to Bidders By Refusing to Continue to Consider the Valid Original Proposal of IBS.</u>

Solicitation No. CPO-0200006 (the "Solicitation") is a Request for Proposals for a fixed prince contract to perform facilities management services at NSF. IBS submitted a timely proposal in response to the Solicitation and its proposal was accepted by NSF as timely and evaluated by NSF without objection.

On March 6, 2003, IBS was among a small group of finalists which were invited to participate in an oral question and answer session with NSF officials to discuss their proposals.

On March 10, 2003, NSF wrote a letter to IBS informing IBS that it would be given an opportunity to submit final proposal revisions and its best and final offer (Attachment 1). That letter reads in relevant part:

> The purpose of this letter is to inform you that all discussions have been concluded and as a result the National Science foundation requests that you submit your final proposal revision (FPR). The FPR gives your organization an opportunity to submit its best terms from a technical and cost/price standpoint.

NSF's March 10 letter goes on to make it clear that finalists have the option to stand by their current offers and submit no changes to their original proposals, or they may submit revised proposals. NSF also makes it clear that it is not mandatory that the three questions attached to the March 10 letter be answered by IBS. The questions were purely for consideration by IBS as it considered its final offer. NSF's letter continues in relevant part:

> You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. *If no revisions are made to your original offer, confirm that the offer remains unchanged*. (Emphasis added). Attached are CPO-0200006, Amendment No. Six, and additional questions *for your consideration* as you prepare your FPR.

Therefore, NSF expressly provides for the possibility that one or more bidders may want to make no changes to their original proposals. Indeed, NSF provides instructions for bidders who wish to do just that.

There is nothing in NSF's March 10 letter, nor in the RFP, which justifies NSF now penalizing and suddenly rendering "ineligible for further consideration" a previously valid proposal simply because a bidder chooses to exercise its right to stand by its original proposal.

On March 13, 2003, by the stated deadline of 10:30 a.m., IBS submitted a timely and properly formatted revised proposal to NSF in electronic form. A paper copy of the same revised proposal was delivered a short time later.

On March 20, 2003, NSF wrote a letter to IBS informing it that its original proposal, and its revised proposal, were now "ineligible for further consideration due to late submission." (Attachment 2)

NSF based this arbitrary decision on several conflicting rationales.

First, NSF stated that IBS's original proposal, which already had been accepted and successfully evaluated by NSF, and which IBS was entitled to leave unchanged, was now "ineligible for further consideration" because NSF "issued an amendment adding a requirement that the initial proposal did not address."

The "requirement" cited by NSF was Amendment 6, which NSF stated was a "substantial change in the period of performance." NSF also cited Amendment 7, which contained an electronic version of the pricing schedule included in Amendment 6, and a revised publication inventory.

Without stating what, if any, unaddressed "requirements" these two amendments contained, NSF then abandoned this argument and, in the following sentence, adopted a new rationale for refusing to consider IBS's existing proposal, namely, "[IBS's] prices proposed in the initial proposal are no longer relevant."

It is unclear how prices bid by IBS on a fixed price contract became irrelevant.

At no point has IBS withdrawn its original proposal; nor has IBS notified NSF that its initial proposal should no longer be considered. Indeed, at IBS's request, Federal Management Systems, Inc. (FMS), explicitly confirmed to NSF that IBS's initial proposal should be considered if its revised electronic and paper submissions were not accepted.

In a final attempt to justify its sudden, arbitrary disqualification of IBS, NSF rationalized that "[IBS's] initial proposal also does not adequately address areas of concern to the technical evaluation panel."

However, NSF's newest rationale collides with the express instructions contained in its own March 10 letter. In that letter, NSF makes it clear that the questions put to IBS were not mandatory, but were only "for [IBS's] consideration." Moreover, in the same paragraph, NSF explicitly allows for bidders to leave their original offers unchanged, and still have them considered.

> You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. *If no revisions are made to your original offer, confirm that the offer remains unchanged*. (Emphasis added). Attached are CPO-0200006, Amendment No. Six, and additional questions *for your consideration* as you prepare your FPR.

According to NSF officials, the questions raised were completely answered to NSF's satisfaction by IBS in its oral presentation. Present at this meeting were the Contracting Officer and the Contracting Officer's Technical Representative.

NSF cannot have it both ways. It cannot inform bidders in writing that they can stand by their original proposals, and then penalize them by refusing to consider those same proposals when bidders elect this option. Such agency behavior is arbitrary, unlawful, and a clear a violation of the very rules set out by NSF itself.

NSF also claims that the e-mailed versions of the pricing schedule in Amendment 6, the revised publication inventory levels, and the contract start date of April, 2003 were significant changes that were not addressed in IBS's original proposal. Therefore, NSF reasons, the original proposal can no longer be considered.

However, none of these changes were "requirements" of the contract. Each of them was addressed during IBS's oral question and answer period with NSF. The revised start date has been long known to IBS and others, and the revised inventory levels and pricing schedule had little impact on IBS's revised price or technical proposals. None of these "requirements" were significant, and IBS has the right to have its original proposal considered in making this award.

The simple truth is that none of these allegedly "significant questions and amendments" justify NSF's arbitrary refusal to consider the valid, timely and properly submitted original proposal

now pending before NSF.

On March 21, 2003, IBS wrote a letter seeking clarification of NSF's March 20 letter, challenging the basis for NSF's decision, and seeking a meeting to discuss the issue. In a letter dated March 25, 2003, NSF simply referred IBS to the rationale contained in its March 20 letter and declined to meet with IBS. This protest followed.

II. The Revised Proposal Was Timely and Proper Since the Solicitation Does Not Prohibit Electronic Submissions.

A. This Solicitation Has Permitted the Frequent Use of Electronic Communications to Transfer Information to NSF and is, Therefore, Authorized.

NSF's March 20 letter also claims that IBS's revised proposal was late. NSF concedes that IBS's electronic version of the revised proposal was received by the stated deadline. However, NSF claims that electronic submissions are not authorized and, therefore, cannot be accepted.

NSF points to nothing in the Solicitation which prohibits electronic submissions. Indeed, most of the information exchanged during this Solicitation has been distributed in electronic form. NSF's March 20 letter explicitly points to amendments, schedules, and inventory revisions which were electronically conveyed.

In the absence of an explicit prohibition against electronic submission, in light of the frequent and permitted use of electronic communications throughout this solicitation process, and given the timely electronic submission of IBS's revised proposal, it is difficult to understand how either the Government, or any other bidder, would be harmed by consideration of a timely, properly formatted, electronic submission of a revised proposal that gives the best value to the Government.

Indeed, FAR 15.208(b), which NSF cites in its March 20 letter, allows the Contracting Office to accept timely electronic submissions in this case, since electronic submissions are not prohibited. FAR 15.208(a). Moreover, Section 15.208 also allows for acceptance of IBS's submission if the Contracting officer determines that accepting the electronic or paper proposal would not unduly delay the acquisition, and IBS's proposal was under the control of the Government prior to the time set for receipt of proposals, which its electronic submission clearly was. FAR 15.208(b)(1)(ii).

Finally, FAR 15.208(b)(2) allows for a late modification of an otherwise successful proposal, that makes its terms more favorable to the Government, to be considered at any time it is received and accepted.

Therefore, there is no reason for NSF to refuse to consider IBS's valid, existing proposal, or its timely electronic revised proposal, in determining the best value of the Government.

IBS, therefore, respectfully requests that IBS's original and revised proposal be immediately considered for award of this contract. IBS further requests that any award be delayed pending the final determination of this protest.

Sincerely,

Carlton Joseph
Vice President & Chief Operating Officer

cc: Ms. Susan English
Mr. Aubrey Stephenson

Attachments