**NATIONAL SCIENCE FOUNDATION**
4201 WILSON BOULEVARD
ARLINGTON, VIRGINIA 22230

APR 17 2003

Carlton Joseph
Vice President & Chief Operating Officer
Integrated Business Solutions, Inc.
9320 Annapolis Road, Suite 200
Lanham, Maryland 20706

Re: Agency-level protest of Integrated Business Solutions

Dear Mr. Joseph:

This is in response to your letter dated March 28, 2003, in which Integrated Business Solutions, Inc. (IBS) protested the contracting officer's decision to: (1) eliminate IBS's initial proposal from further consideration; and (2) reject IBS's Final Proposal Revision (FPR) for lateness.

Based on my review, I have determined that the contracting officer properly eliminated IBS's initial proposal from further consideration because the FPR revoked the initial proposal, IBS failed to confirm its initial proposal, and IBS's initial proposal is not an "otherwise successful offer." I also find that the contracting officer properly rejected IBS's FPR as it was received by the agency after the proposal deadline. For these reasons, IBS's protest is denied in full.

## I. SUMMARY OF THE FACTS

The National Science Foundation (NSF) issued solicitation No. CPO-0200006, Facilities Management Services, on July 17, 2002. IBS was one of four offerors that submitted initial proposals that were determined to be within the competitive range. One offeror subsequently withdrew its proposal. The contracting officer then conducted oral and written discussions with the three remaining companies. Following discussions, the agency, in a letter dated March 10, 2003, requested FPRs from the offerors. If an offeror elected not to submit a FPR, it was instructed to confirm its initial proposal. The agency specified March 13, 2003, 10:30 a.m., eastern standard time (EST)[1] as the deadline for receipt of FPRs. Attached to the same letter, the contracting officer also issued Amendment 06 (A06) that, among other things, revised the period of performance for the contract from November 15, 2002, through November 14, 2009, to April 1, 2003, through March 31, 2010. On March 12, 2003, the contracting officer issued Amendment 07 (A07), which reiterated previous instructions concerning submissions of FPRs, and provided information concerning a reduced publication inventory requirement.

On March 13, 2003, NSF received timely FPRs from Elite Management Services, Inc. and Glencor Services, Inc. by hand-delivery at 9:40 a.m. and 10:20 am, respectively.

---

[1] All times mentioned in this document refer to eastern standard time (EST).

NSF received IBS's hand-delivered FPR at 11:11a.m., 41 minutes after the deadline. At 10:30 a.m., NSF received an incomplete FPR by e-mail from IBS that contained only the technical proposal. At 10:32 a.m., NSF received the remainder of the protester's FPR.

On March 20, 2003, the contracting officer notified IBS that its FPR would not be considered because of lateness. The same letter also notified protester that IBS's initial proposal would not be considered for award.

## II. LEGAL DISCUSSION

### A. The Contracting Officer Properly Eliminated IBS's Initial Proposal for Contract Award.

As a general rule, once an offeror submits an FPR, the award must be based on the FPR and not upon the prior version of the proposal. *Department of the Army—Recon.*, B-251527.3, 93-2 CPD P 178 (1993). The General Accounting Office (GAO) has held that the submission of an FPR demonstrates an offeror's intent to modify or replace its initial proposal, and thus, operates to extinguish the agency's right to accept the earlier offer. *Id.* Likewise, even when the FPR is not eligible for consideration due to lateness, it still operates as a revocation of the initial proposal. *Touchstone Textiles, Inc.*, B-272, 230.4 96-2CPD 107 (1996) (a late FPR demonstrates an intent by the offeror to replace its initial proposal). Moreover, an initial proposal cannot be accepted where it does not commit the offeror to a requirement added by amendments to the solicitation subsequent to receipt of initial proposals. *Environmental Control Division, Inc.*, B-255, 181, 94-1 CPD P 115 (1994) (GAO concluded that the offeror's initial proposal could not be considered an "otherwise successful proposal" because it did not commit the offeror to the change in work hours that resulted from a subsequent amendment to the solicitation).

The record in this case shows that NSF, in the March 10th letter, requested FPRs from the three remaining offerors. In the event that an offeror elected not to submit an FPR, the letter instructed the offeror to confirm its initial proposal. In other words, each offeror had the option of submitting an FPR or proceeding with its initial proposal. It is undisputed that IBS elected to submit an FPR.[2] (Whether that FPR is untimely is another issue addressed later in this memorandum).

As dictated by GAO decisions cited above, IBS's FPR submission revoked the initial offer. When this occurs, the agency is not free to consider the terms of the prior proposal -- regardless of whether the subsequent revision was timely. IBS's alleged confirmation to the agency that it was proceeding with its initial proposal <u>if</u> the FPR was not accepted does not vitiate its intent to replace its initial offer by submitting an FPR.

Further, assuming IBS had not submitted an FPR, the initial proposal could not be considered, as IBS failed to confirm its initial offer as required by the agency. IBS alleged in its protest that, Federal Management Systems, Inc., a proposed subcontractor,

[2] IBS does not dispute that it submitted a FPR. Rather, it claims that the FPR was properly submitted and should be considered. *See, IBS Protest*, p.2.

verbally confirmed with NSF its desire to proceed with the initial offer if the FPR was not accepted. *IBS Protest*, p. 3. IBS (the offeror for this solicitation) was required to confirm the initial proposal if it so chose, not the proposed subcontractor-- a non-interested party to this protest.

In addition, the contracting officer properly eliminated IBS's initial proposal from further consideration because the initial proposal did not address issues raised during negotiations or commit IBS to requirements added to the solicitation after the initial proposal was submitted. For example, following initial proposal submission, Amendment 06 revised the period of performance for the contract from November 15, 2002, through November 14, 2009, to April 1, 2003, through March 31, 2010. Amendment 07 provided information concerning a reduced publication inventory. These requirements, which IBS could not have taken into consideration in the initial proposal, may substantially affect an offeror's contract price.

B. <u>The Contracting Officer Properly Rejected IBS's Final Proposal Revision For Untimeliness.</u>

Proposals, modifications, and final proposal revisions received after the time specified for receipt of such submissions – even if by only a few minutes -- are considered late. FAR § 15.208(b); *Environmental*, *supra*, (offeror's hand-delivered final proposal was rejected for being 4 minutes late). Under these circumstances, the contracting officer will not consider any late proposals unless (1) an electronic copy (if authorized) was received by the government by 5:00 p.m. one working day prior to the deadline for receipt of proposals; (2) the government's action was the paramount cause of the late receipt; or (3) the late submission was the only proposal the government received. FAR § 208(b)(1)(i)-(iii).

IBS does not dispute that the government received IBS's hand-delivered FPR after the 10:30 a.m. deadline. Further, IBS does not contend that the government caused the untimely receipt. IBS only argues that the electronic version of its FPR submitted by e-mail was received on time by NSF; and therefore, should be considered. *IBS Protest*, pp. 4-5. Specifically, IBS argues that because nothing in the solicitation prohibits an offeror from submitting an FPR in electronic form, and because "most of the information exchanged during this [s]olicitation has been distributed in electronic form," its electronic FPR represents a timely submission.

The contracting officer properly rejected IBS's FPR submitted by e-mail because that method of transmission was not explicitly authorized. According to the FAR and GAO decisions, an acceptable method of transmitting (e.g., by regular mail, electronic commerce, or facsimile) proposals, modifications or final proposal revisions to the government is one that is explicitly authorized by the procuring agency. FAR § 15.208(a); *Environmental Control Division*, Inc., B-255, 181, 94-1 CPD P115 (1994) (GAO ruled in favor of an agency's decision to reject protester's FPR submitted by facsimile where the solicitation did not explicitly authorize facsimile as a method of transmission). Moreover, the required authorization must be in writing and cannot be

inferred by conduct or verbal assurances from government contracting officials. *G.D. Searle & Company*, B-247, 077, 92-1 CPD P 406 (1992) (absent explicit authorization in the solicitation or an amendment, a contracting officer's verbal assurance that a protester may transmit its offer by facsimile fails to constitute proper authorization).

It is undisputed that IBS's paper copy FPR was received by NSF 41 minutes after the deadline. IBS's assertion that e-mail transmission was authorized because it was not specifically prohibited is simply contrary to well-settled law. IBS has failed to establish, nor is there any evidence in the record, that NSF authorized electronic transmission of offers or modifications. Further, even if NSF had authorized e-mail transmission, IBS's FPR was late, as the agency did not receive protester's e-mail by 5 p.m. the day before the deadline in accordance with FAR 15.208(b)(1)(i).

Even if NSF had authorized receipt of FPRs by e-mail for the 10:30 a.m. deadline, the contracting officer would still be justified in rejecting IBS's partial submission. *See, Matter of Cyber Digital, Inc.*, B-270, 107, 96-1CPD P 20 (1996) (agency was not required to consider offeror's best and final offer where only 8 of 19 pages were received on time). IBS's first e-mail, received by NSF at 10:30 a.m., contained only the technical portion of the FPR. A subsequent e-mail from IBS, received by NSF at 10:32 a.m., contained the cost proposal for IBS's final offer. Accordingly, even working under the hypothetical scenario most favorable to IBS -- that NSF authorized e-mail transmission of proposals, modifications or final proposal revisions -- , the FPR was still untimely as the cost proposal was submitted after the specified deadline.

## III. DECISION

For the foregoing reasons, I find that the contracting officer's decisions in this matter are reasonable and in accordance with procurement law and regulations. Therefore, the protest is denied in full.

This is NSF's final decision on this matter. If you are dissatisfied with the decision you may file a protest with the General Accounting Office within 10 calendar days of your receipt of this letter.

Sincerely,

Thomas N. Cooley

Thomas N. Cooley
Director, Office of Budget, Finance
and Award Management