# Appeal by Integrated Business Solutions, Inc. of

# Agency Level Decision of

# National Science Foundation in

# Solicitation No. CPO-0200006

# (Facilities Management Services)

# TABLE OF CONTENTS


I. CASE SUMMARY ........................................ 1

II. FACTUAL BACKGROUND ........................................ 2

III. THERE IS NO PRECEDENT UNDER A LONG STRING OF GAO DECISIONS OR CONTRACT LAW CASES FOR IGNORING THE EXPRESS INTENT OF AN OFFEROR IN DEEMING ITS OFFER REVOKED. ............... 5

A. The Case Law Clearly Demonstrates That IBS Expressed No Intent To Revoke Its Original Proposal When It Explicitly Stated That Its Original Proposal Should Serve As Its Offer If Its Revised Proposal Were Ruled Untimely by NSF. ........................................ 5

B. NSF is Acting Arbitrarily and Contrary to Its Own Instructions to Bidders By Refusing to Consider the Valid Original Proposal of IBS. .................. 9

IV. IBS'S REVISED PROPOSAL WAS TIMELY AND PROPER SINCE THE SOLICITATION DOES NOT PROHIBIT ELECTRONIC SUBMISSIONS. .... 12

A. This Solicitation Has Permitted the Frequent Use of Electronic Communications to Transfer Information to NSF and is, Therefore, Authorized. ........................................ 12

**Keith Calhoun-Senghor, Esq.**
**Counselor at Law**
1429 Madison St., N.W.
Washington, D.C. 20011
Tel: 202/425-4968
Fax: 202/291-4891

**VIA FACSIMILE (202) 512-9749**
**AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

April 28, 2003

Office of the General Counsel
U.S. General Accounting Office
441 G Street, N.W., Room 1139
Washington, DC 20548
ATTN: Procurement Law Control Group

Subject: Appeal of NSF's Decision Finding IBS's Original and Revised Proposals "Ineligible for Further Consideration" (Solicitation No. CPO-0200006, "Facilities Management Services")

Dear Sir or Madame:

IBS appeals a decision by NSF that squarely raises the novel and critical question: Does the conditional offer of a BAFO constitute a *per se* revocation of a valid, existing previous offer, regardless of explicit statements, facts, and circumstances demonstrating an offeror's express intent to the contrary?

## I. CASE SUMMARY

On March 28, 2003, Integrated Business Solutions, Inc. ("IBS") filed a timely protest with the National Science Foundation ("NSF") challenging NSF's refusal to consider either the timely existing proposal of IBS, or the revised proposal of IBS in Solicitation No. CPO-0200006, "Facilities Management Services."

IBS protested this decision because NSF erroneously ruled that IBS had revoked its original offer by submitting a revised proposal, despite explicit statements by IBS's representative at the time of its submission that the original proposal should be considered for award if NSF failed to grant a requested extension or ruled the revised proposal untimely.

In arriving at its erroneous decision, NSF ignored a long line of GAO decisions and court cases setting forth the well-recognized principle that an offeror must intend for its offer to be revoked, and that this intent must be clearly conveyed to the offeree, for the offeror to

legally revoke an existing offer. NSF also ignored explicit statements made by IBS's designated representative expressly stating IBS's intention to have its original offer considered for award. These statements specifically negated any implied intent inferred from its revised offer. Finally, NSF is now urging the GAO to adopt a new, and legally unprecedented, rule of contract formation, namely: that the conditional offer of a revised proposal constitutes a *per se* revocation of a valid, existing proposal, regardless of explicit statements, facts, and circumstances demonstrating an offeror's express intent to the contrary.

If NSF's position is upheld, it will create an entirely new doctrine of contract formation that ignores decades of GAO decisions, common law court cases, and completely removes intent as the key element in the formation and revocation of contracts.

Furthermore, there is no legal or factual basis for NSF's finding that IBS's original offer did not fully address the requirements of the Solicitation or that its revised offer was untimely.

Therefore, IBS respectfully requests that NSF be required to consider IBS's original offer, or its revised offer, in making this award.

## II. FACTUAL BACKGROUND

Solicitation No. CPO-0200006 (the "Solicitation") is a Request for Proposals for a fixed price contract to perform facilities management services at NSF. IBS submitted a timely proposal in response to the Solicitation and its proposal was accepted by NSF as timely and evaluated by NSF without objection.

On March 6, 2003, IBS was among a small group of finalists who were invited to participate in an oral question and answer session with NSF officials to discuss their proposals.

On March 10, 2003, NSF wrote a letter to IBS informing IBS that it would be given an opportunity to submit final proposal revisions and its best and final offer. (Attachment 1). That letter reads in relevant part:

> The purpose of this letter is to inform you that all discussions have been concluded and as a result the National Science foundation requests that you submit your final proposal revision (FPR). The FPR gives your organization an opportunity to submit its best terms from a technical and cost/price standpoint.

NSF's March 10 letter went on to make it clear that finalists had the option to stand by their current offers and submit no changes to their original proposals, or they could submit revised proposals. NSF also made it clear that it was not mandatory that the three questions attached to the March 10 letter be answered by IBS. The questions were purely

for consideration by IBS as it considered its final offer. NSF's letter continued in relevant part:

> You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. *If no revisions are made to your original offer, confirm that the offer remains unchanged*. (Emphasis added). Attached are CPO-0200006, Amendment No. Six, and additional questions *for your consideration* as you prepare your FPR.

Therefore, NSF expressly provides for the possibility that one or more bidders may wish to make no changes to their original proposals. Indeed, NSF provides instructions for bidders who wish to do just that. No deadline was set for when offerors must confirm that their offer remained unchanged.

It is worth noting that while the letter contains explicit language regarding the deadline for BAFOs, and the consequences of late submission, the NSF March 10 Letter makes no reference to the possibility that confirmations could be treated as late. In fact, the provision discussing confirmation of original offers appears two entire paragraphs after the discussion of deadlines for BAFOs, and mentions neither how, nor when, confirmations are to be given.

On March 13, 2003, by the stated deadline of 10:30 a.m., IBS submitted a timely and properly formatted revised proposal to NSF in electronic form. A paper copy of the same revised proposal was delivered minutes later.

When the paper version of the proposal was delivered by IBS's validly designated representative, Dr. Abe Kellizy, he spoke with designated representatives of NSF to discuss its timeliness. IBS informed the NSF contract officials that a deadline extension had been requested by IBS, and that an electronic version had been sent. He also explicitly conveyed to them that if the extension were not granted, or if the revised proposal were ruled by NSF, in its discretion, to be untimely, IBS wished its original proposal to be considered for award. See Attachment 7 (Affidavit of Dr. Abe Kellizy).

On March 20, 2003, NSF wrote a letter to IBS denying the requested extension and informing IBS that its original proposal, and its revised proposal, were "ineligible for further consideration due to late submission." (Attachment 2).

In this letter, NSF based its erroneous and arbitrary decision on several conflicting rationales.

First, NSF stated that IBS's original proposal, which already had been accepted and successfully evaluated by NSF, and which IBS was entitled to leave unchanged, was now "ineligible for further consideration" because NSF "issued an amendment adding a requirement that the initial proposal did not address."

The "requirement" cited by NSF was Amendment 6, which NSF stated was a "substantial change in the period of performance." NSF also cited Amendment 7, which contained an electronic version of the pricing schedule included in Amendment 6, and a revised publication inventory, neither of which constituted a "requirement."

Therefore, the only new "requirement" in Amendment 6 was a five-month delay in the start date of the contract. That the contract's scheduled November 2002 start date was delayed was well known by the time of the March 6, 2003 oral discussions. Moreover, there is no disadvantage to the government, since IBS's original proposal offered a proposed start date earlier than that actually required.

IBS's original offer proposes the same amount of effort—five years—as required by the amended solicitation at a firm fixed price. Amendment 6 shifts the five-year period of the contract forward five months because of procurement delays. Nevertheless, IBS fully addressed the government's requirement for a five-year period of performance at a firm fixed price. The only issue is when the contract will end. In light of IBS's clearly expressed commitment to a full five-year performance period, the exact end date of the contract is an issue that can be properly addressed in post-award negotiations or as a post-award modification under FAR 15.208(b), which permits the government to consider a late modification of an otherwise successful proposal.

This is NSF's sole example of a "requirement" not addressed by IBS's original proposal which it claims justifies a valid, existing proposal not being further considered.

Later in its letter, NSF abandons its "new requirements" argument and adopted a new rationale for refusing to consider IBS's existing proposal, namely, "[IBS's] prices proposed in the initial proposal are no longer relevant."

It remains unclear how prices properly bid on a fixed price contract ever become irrelevant. NSF has never offered an explanation. IBS never withdrew its original proposal. Indeed, it explicitly stated that its original proposal was to be considered by NSF if its revised proposal were ruled untimely.

In a final attempt to justify its disqualification of IBS, NSF rationalized that "[IBS's] initial proposal also does not adequately address areas of concern to the technical evaluation panel."

However, NSF's rationale was at odds with the express instructions contained in its own March 10 letter. In that letter, NSF made it clear that the questions put to IBS were not mandatory, but were only "for [IBS's] consideration." Moreover, in the same paragraph, NSF explicitly allows for bidders to leave their original offers unchanged, and still have them considered.

> You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. *If no revisions are made to your original offer, confirm that the offer remains unchanged*. (Emphasis added). Attached are CPO-0200006, Amendment No. Six, and additional questions *for your consideration* as you prepare your FPR.

No deadline was given for confirmation of the original offer.

NSF cannot have it both ways. It cannot inform bidders that they may stand by their original proposals, and then penalize them by refusing to consider those same proposals when bidders elect this option. Such agency behavior is arbitrary, unlawful, and a clear a violation of the very rules NSF set out in its solicitation.

On March 21, 2003, IBS wrote a letter seeking clarification of NSF's March 20 letter, challenging the basis for NSF's decision, and seeking a meeting to discuss the issue. Attachment 3. In a letter dated March 25, 2003, NSF simply referred IBS to the rationale contained in its March 20 letter and declined to meet with IBS. Attachment 4. A formal protest to the agency followed. Attachment 5.

In a letter dated April 17, 2003 (the" NSF April 17 Letter"), NSF denied IBS's protest in full. Attachment 6. The letter repeated many of the arguments used in NSF's March 10 letter and introduced NSF's latest proposal to rewrite the rules of contract formation. This timely appeal followed.

## III. THERE IS NO PRECEDENT UNDER A LONG LINE OF GAO DECISIONS AND CONTRACT LAW CASES FOR IGNORING THE EXPRESS INTENT OF AN OFFEROR IN DEEMING ITS OFFER REVOKED.

### A. The Case Law Clearly Demonstrates That IBS Expressed No Intent To Revoke Its Original Proposal When It Explicitly Stated That Its Original Proposal Should Serve As Its Offer If Its Revised Proposal Were Ruled Untimely by NSF.

It is well settled contract law that the revocation of an offer must be accompanied by the offeror's clear intent to revoke the offer. See Robotic Systems Technology, B-271760, May 14, 1996, 96-1 CPD ¶ 229 (offeror provided explicit, written revocation of its original offer, and neglected to submit a revised offer); Touchstone Textiles, Inc., B-272230.4, September 5, 1996, 92-2 CPD ¶ 107 (offeror submitted BAFO after the deadline and demonstrated no intent to have its original offer considered until after contract was awarded; "[W]e do not think the agency was free to ignore the intent conveyed by the submission of a modified offer." the new, unconditional offer "demonstrated an intent by the protester to modify and replace its initial offer terms."); Department of the Army—Reconsideration, B-251527.3, September 17, 1993, 93-2 CPD ¶ 178 (where GAO confirmed the critical role an offeror's expression of intent plays in

determining whether an offeror's original proposal remains under consideration; "Since [offeror's] BAFO was late, and its initial offer had already expired, we concluded that there was in effect no offer from [offeror] which the agency could accept."); To the Secretary of the Interior, B-125548, November 4, 1955, 35 CPD ¶ 272 (ambiguous, equivocal, written revocation did not constitute a valid revocation of an existing offer; "The language of a revocation should be as direct and explicit as an acceptance. [Citation omitted]. The language of the letter of May 26 cannot reasonably be interpreted as intending a withdrawal of the bid."); Butler v. Wehrley, 425 P.2d 130, 134, 5 Ariz. App. 228 (1967) (ambiguous, equivocal revocation language did not constitute a valid revocation of an existing offer); Larson v. Superior Auto Parts, Inc., 275 Wis. 261, 270, 81 N.W. 2d 505, 511 (1957) (Wisconsin Supreme Court; "While an offer may be revoked by a communication from the offeror to the offeree that the offeror no longer intends to enter into the proposed contract, providing the communication is received by the offeree before he has exercised his power of creating a contract by acceptance of the offer, [citation omitted], from the evidence here it does not appear that the defendant, its officers, or agents at any time communicated to the interested stockholders an intention to withdraw or revoke the offer to purchase."); Outcault Advertising Co. v. Buell, 71 Ore. 52, 141 P. 1020 (1914) (Oregon Supreme Court; ambiguous, equivocal revocation language held legally insufficient to constitute a revocation of a valid existing offer); Restatement of Contracts 2d, § 42 (1981) ("Offeree is justified in relying on the offeror's manifested intention.") and § 43 (equivocal action is insufficient to revoke an offer; "Thus mere negotiations with a third person, or even a definite offer to a second offeree, may be consistent with an intention on the part of the offeror to honor an acceptance by the original offeree."); Compare Allen R. Krauss Co. v. Fox, 132 Ariz. 125, 644 P.2d 279 (1982) (where offeror communicated an explicit revocation of its offer to sell property prior to offeree's acceptance).

In this case, IBS manifested no intent to revoke its original offer. Indeed, it explicitly notified NSF that its original proposal would serve as its offer if its revised proposal were determined, in NSF's discretion, to be untimely.

This approach is both legally permissible and sensible. NSF had, and still has, the power to extend the submission deadline or to otherwise accept IBS's revised proposal. See FAR 15.208(b) (outlining terms under which a late proposal may be accepted by the government); Robotic Systems Technology, B-271760, May 14, 1996, 96-1 CPD ¶ 229 ("After receipt of Robotic's [late] offer, the contracting officer directed that all BAFOs, including Robotic's [late] offer, be evaluated to determine 'whether it was clearly in the government's best interests to reopen discussions and allow [Robotic] to submit a timely BAFO.'"); Logitek, Inc., B-238773, July 6, 1990, 90-2 CPD ¶ 16 (where the government properly awarded a contract based on an expired initial offer, after requesting that it be resubmitted, but erroneously allowed a post-award modification that impermissibly altered the terms of the original solicitation); See also Department of the Army—Reconsideration, B-251527.3, September 17, 1993, 93-2 CPD ¶ 178.

If NSF does not see fit to exercise its discretion in IBS's favor, it still will have received express notice of IBS's intent to have its original offer considered for award, as expressly provided for in NSF's March 10 letter. See NSF March 10 Letter.

This would not be the first time the GAO has reached this conclusion. In Department of the Army—Reconsideration, B-251527.3, September 17, 1993, 93-2 CPD ¶ 178, the Army sought remedial maintenance services for its information processing centers worldwide. The solicitation stated that, absent any indication to the contrary, initial offers would provide for a 60-day acceptance period. The solicitation also contained a preference for Small Disadvantaged Businesses (SDB). No offeror objected to the 60-day acceptance period.

Initial proposals were submitted on July 20. One offeror, SRI, was questioned about several significant deficiencies in its proposal. As a result, SRI responded on August 17 with a letter containing clarifications and revised prices. Further price revisions were sent by SRI by letter on September 3.

On September 11, the government requested submission of BAFOs by 2:00 pm on September 22. The government also stated that any offeror who did not wish to change its initial proposal should submit a letter so stating. SRI submitted a late BAFO and the government refused to consider it. However, despite the fact that the acceptance period for its original proposal, with its modifications, had expired, the contracting officer agreed to evaluate and consider SRI's original proposal and its modifications, for award.

Despite questions about its eligibility for the SDB preference, SRI was awarded the contract and the award was protested. The protester argued that the government could not properly consider SRI's original proposal for award since it had expired by its own terms, and that the government improperly applied the SDB preference to SRI.

The agency argued that the 60-day acceptance period also applied to revisions of the original offer and, therefore, the government had the right to accept any revised offer within 60 days, "regardless of an offeror's attempts to withdraw that offer." Id.

The GAO noted that it previously had found no intent on the part of SRI to keep its original offer open. Therefore, the BAFO submission, absent any contrary expression of intent by SRI, gave notice to the government of SRI's intent to withdrawal of its original proposal, including its modifications.

> With regard to the agency's argument that [SRI] intended to keep its September 3 pricing open for an additional 60-day period, our Office found no evidence of any such intention in SRI's September 3 letter. Further, SRI had subsequently tried to submit a revised proposal, which was received late.

Id.

The GAO found that the agency's letter had given all offerors two ways to respond: by submitting a timely BAFO or by sending a timely letter stating they did not wish to change their original proposal. The latter would, in effect, revive the expired initial offers. In this case, the agency required both written notices to be submitted by the deadline for the BAFOs. "Since SRI's BAFO was late, and its initial offer had already expired, we concluded that there was in effect no offer from SRI which the agency could accept." Id.

In reviewing SRI's grounds for reconsideration, the GAO confirmed the critical role an offeror's intent plays in determining whether an original proposal remains under consideration. In rejecting the argument that the rules set forth in the government's letter were merely precatory, the GAO noted that the word "request" in the agency's letter had limits to its meaning:

> It does not mean, however, that once a vendor submits a proposal it can expect to remain in the competition indefinitely when the proposal by its own terms expires by a date certain and the agency makes it clear that vendors are to either submit BAFOs or explicitly state their desire to remain in the competition on the basis of their initial proposals. (Emphasis added).

Id.

Therefore, Department of the Army—Reconsideration implicitly recognizes the power of an agency to evaluate original offers, even after a late BAFO submission, assuming the original offer was not explicitly revoked (or expired by its own terms) and it was in the best interests of the government.

Unlike Department of the Army—Reconsideration, NSF did not require written confirmation from offerors in order to have their original proposals considered. NSF also set no deadline for confirmation. Moreover, it is worth noting that in NSF's March 10 letter, BAFO submissions and confirmations are treated differently. The second paragraph of NSF's March 10 letter, states that:

> Any modification of a former offer received after the date and time specified above will be handled in accordance with the *Instructions to Offerors—Competitive Acquisition* provision of the solicitation. (FAR 521.215-1)

In contrast to this explicit language regarding late BAFOs, NSF's letter makes no reference to the possibility of late confirmations. No confirmation deadline is set, and therefore, no penalty is provided for a "late" confirmations. In fact, the provision discussing confirmation of original offers appears two entire paragraphs after the discussion of deadlines for BAFOs, and mentions neither how, nor when, confirmations are to be given. It may be assumed that confirmations must be received within a

reasonable time. That certainly was the case here, where NSF learned of IBS's intent to have its original offer considered within minutes of the BAFO deadline.

In the teeth of IBS's explicit statements to the contrary, there is no reasonable basis for NSF to conclude that IBS intended to revoke its original offer. Such a proposition flies in the face of decades of well-established GAO and contract law precedent.

B. NSF is Acting Arbitrarily and Contrary to Its Own Instructions to Bidders By Refusing to Consider the Valid Original Proposal of IBS.

NSF's March 10 letter makes it clear that offerors have the option to stand by their original proposals. NSF March 10 Letter. NSF also makes it clear in that letter that responses to its questions were optional. The questions were purely for consideration by IBS as it considered a possible revised offer.

> You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. *If no revisions are made to your original offer, confirm that the offer remains unchanged*. (Emphasis added). Attached are CPO-0200006, Amendment No. Six, and additional questions *for your consideration* as you prepare your FPR.

NSF expressly provides for the possibility that one or more bidders may wish to make no changes to their original proposals. Moreover, in this case there was no deadline set for confirmation of original proposals. See PBM Construction, Inc., B-271344, May 8, 1996, 96-1 CPD ¶ 216 (where an original valid offer, still within its 75-day acceptance period, was followed by an untimely BAFO submission; the GAO found the original offer was not revoked by the subsequent BAFO and could be accepted by the government); Compare Robotic Systems Technology, B-271760, May 14, 1996, 96-1 CPD ¶ 229 (where a specific deadline was set for confirmation of existing offers; "[W]e disagree with Robotic that the RFP did not state a date by which an offeror's confirmation of its offer must be submitted under the agency's request for BAFOs. [O]fferors were informed that negotiations would close and BAFOs were due February 29, 1996, and that 'offerors who do not intend to modify their original offer, but who do want to be considered for award, must confirm their offers by responding to this request for [BAFOs] to remain in consideration for award.").

NSF may not now alter the terms of the solicitation to effectively make a BAFO submission a requirement. See Logitek, Inc., B-238773, July 6, 1990, 90-2 CPD ¶ 16 (where solicitation conditions were unfairly relaxed for one offeror after award, without giving an opportunity for others to respond; "Award must be based on the requirements stated in the solicitation.").

NSF cites Environmental Control Division, Inc., B-255181, February 16, 1994, 94-1 CPD ¶ 115, for the proposition that "an initial proposal cannot be accepted where it does

not commit the offeror to a requirement added by amendments to the solicitation subsequent to receipt of initial proposals." NSF April 17 letter, p. 2. However, the circumstances in Environmental Control Division, Inc. were significantly different than this case. In that case, the government added a critical new requirement on which the success of the entire contract hinged.

In Environmental Control Division, Inc., the GSA solicited several firms to perform urgently needed lead abatement and removal work on a federal building that had been undergoing extensive renovations. The presence of lead debris and paint was delaying further renovations and the renovation contractor would not perform this work. Because of the presence of the renovation contractor, all lead abatement work would have to take place outside regular working hours, and after the renovation contractor had left the site.

The original RFP did not mention these restrictions on working hours. Therefore, the solicitation was amended to add this critical new requirement. The government conducted telephonic discussions with the four offerors to obtain their commitment that the work would actually be done outside normal working hours. This oral request for a revised offer was followed by facsimile messages to the offerors stating:

> [A]ll offerors are asked to confirm in writing that no work on this project shall be performed during the hours of 6:00 am -- 4:00 pm, Monday through Friday.
>
> ...
>
> Your written response to this letter is required by 3:00 PM MST [Mountain Standard Time] on September 24, 1993. Any revisions received after such time and date will be treated as a late offer in accordance with the provision in the solicitation entitled FAR 52.215-10, Late Submissions, Modifications and Withdrawal of Proposals [that was included in the RFP].

Id.

Thus, in Environmental Control Division, Inc., the offerors did not have the option to stand by their original proposals. Unlike this case, they were required to commit to this critical new requirement if they wished to remain in consideration for award.

One offeror was late in submitting its commitment, but argued that the government should still consider its initial offer. The GAO rejected this argument and found that "the original proposal could not be accepted as it did not commit [the offeror] to work during other than regular working hours, a requirement which was added to the solicitation after receipt of initial proposals." Id. Because the original offers did not contain the critical requirement needed for the success of the contract, the offeror's initial proposal could not be considered an "otherwise successful" proposal. Id.

In this case, unlike Environmental Control Division, Inc., offerors were given the option by NSF to have their original proposals considered for award. NSF March 10 Letter.

Unlike Environmental Control Division, Inc., no written commitment to a new requirement was required for further consideration. Id. Indeed, it would be logically impossible for IBS's original proposal to commit to a new "requirement" that followed it in time. Yet, that is exactly what NSF asks of IBS, under penalty of disqualification. NSF April 17 Letter, p. 3 ("These requirements, which IBS could not have taken into consideration in the initial proposal, may substantially affect an offeror's contract price.").

A more appropriate precedent would be PBM Construction, Inc., B-271344, May 8, 1996, 96-1 CPD ¶ 216, where an original valid offer, still within its 75-day acceptance period, was followed by an untimely BAFO submission. In that case, the GAO found the original offer was not revoked by the subsequent BAFO and could be accepted by the government.

> In contrast, here, while the facsimile modification was unacceptable, by its own terms, the original bid remained available for acceptance for 75 days....In this case, upon being advised that its modification was invalid, the awardee did not assert that the modification reflected the correction of any mistake; rather, it simply agreed to perform at its initial price. Absent any evidence that a mistake had been made, [offeror] was bound by its initial bid, which the agency could not properly reject. (Emphasis added).

Id.

Despite NSF's eleventh hour attempt to change the rules, it remains a fact that NSF explicitly allowed offerors to stand by their original proposals, even after NSF created its new "requirement" and presented its optional questions for consideration. NSF March 10 Letter. Therefore, one is forced to conclude that NSF's "requirement" was either not so critical as to require its mandatory adoption, as in Environmental Control Division, Inc., or that it is actually not a true "requirement" at all. NSF could have mandated that offerors commit to fulfilling this "requirement" in their BAFOs as in Environmental Control Division, Inc. Instead, NSF expressly permitted offerors to stand by their original proposals, knowing that some issues would not be addressed. NSF should not be able now to disqualify IBS summarily as an offeror for taking NSF at its word.

NSF cannot argue in good faith that IBS' original proposal is not eligible to be considered an "otherwise successful proposal," when it has complied with all the requirements of the solicitation.

IV. IBS'S REVISED PROPOSAL WAS TIMELY AND PROPER SINCE THE SOLICITATION DOES NOT PROHIBIT ELECTRONIC SUBMISSIONS.

A. This Solicitation Has Permitted the Frequent Use of Electronic Communications to Transfer Information to NSF and is, Therefore, Authorized.

NSF claims that electronic submissions are not authorized and, therefore, IBS's timely electronic submission cannot be accepted.

However, NSF points to nothing in the Solicitation which prohibits electronic submissions. Indeed, most of the information exchanged during this Solicitation has been distributed in electronic form. NSF's March 20 letter explicitly points to amendments, schedules, and inventory revisions which were electronically conveyed.

In the absence of an explicit prohibition against electronic submission, and in light of the frequent and permitted use of electronic communications throughout this solicitation process, it is difficult to understand how the Government, or any other bidder, would be harmed by consideration of a timely, properly formatted, electronic submission of a revised proposal that gives the best value to the Government.

Indeed, FAR 15.208(b), which NSF cites in its March 20 letter, allows the Contracting Office to accept timely electronic submissions in this case, since electronic submissions are not prohibited. FAR 15.208(a). Moreover, Section 15.208 also allows for acceptance of IBS's submission if the Contracting officer determines that accepting the electronic or paper proposal would not unduly delay the acquisition, and IBS's proposal was under the control of the Government prior to the time set for receipt of proposals, which its electronic submission was. FAR 15.208(b)(1)(ii).

Finally, FAR 15.208(b)(2) allows for a late modification of an otherwise successful proposal, that makes its terms more favorable to the Government, to be considered at any time it is received and accepted.

Therefore, there is no reason for NSF to refuse to consider IBS's valid, existing proposal, or its timely electronic revised proposal, in determining the best value to the Government.

IBS, therefore, respectfully requests that its original or revised proposal be considered for award of this contract. IBS further requests that any award be delayed pending the final determination of this protest.

Sincerely,

Keith Calhoun-Senghor, Esq.
for Integrated Business Solutions, Inc.

cc: Mr. Bart Bridwell, Contracting Officer, NSF
Ms. Susan English
Mr. Carlton Joseph
Mr. Aubrey Stephenson

Attachments

CERTIFICATION

I certify that on April 28, 2003, a copy of this document was sent via certified mail, return receipt requested to:

Mr. Bart Bridwell
Contracting Officer
National Science Foundation
Division of Contracts, Policy & Oversight
4201 Wilson Boulevard, Room 475
Arlington, Virginia 22230

Keith Calhoun-Senghor, Esq.
for
Integrated Business Solutions, Inc.

# ATTACHMENT 1

NATIONAL SCIENCE FOUNDATION
DIVISION OF ACQUISITON & COST SUPPORT
4201 WILSON BOULEVARD, ROOM 475
ARLINGTON, VIRGINIA 22230

MAR 10 2003

(703) 292-8242
Fax (703) 292-9140/9141

Integrated Business Solutions, Inc.
Carlton Joseph, COO
9320 Annapolis Road, Suite 200
Lanham, Maryland 20706

SUBJECT: CPO 0200006, Request for Final Proposal Revision

Dear Mr. Joseph,

The purpose of this letter is to inform you that all discussions have been concluded and as a result the National Science Foundation requests that you submit your final proposal revision (FPR). The FPR gives your organization an opportunity to submit its best terms from a technical and cost/price standpoint.

An original and six copies of Volume I, Pricing Proposal, and an original and six copies of Volume II, Technical Proposal constituting your FPR must be submitted to Kristin Spencer, National Science Foundation, Division of Contracts Policy and Oversight, 4201 Wilson Boulevard, Room 475; Arlington, VA 22230, by 10:30 AM (EST) on Thursday, March 13, 2003. Review Section A2 of the solicitation for important delivery and deadline information. Any modification of a former offer received after the date and time specified above will be handled in accordance with the *Instructions to Offerors – Competitive Acquisition* provision of the solicitation (FAR 52.215-1).

An official authorized to bind your organization must sign the FPR. As stated in Section L6.1 of the solicitation, revised or added pages shall be a different color than the initial proposal. Revised text shall be a different color than the initial proposal, and be identified by bars and/or other notations in the page borders.

You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. If no revisions are made to your original offer, confirm that the offer remains unchanged. Attached are CPO-0200006, Amendment No. Six, and additional questions for your consideration as you prepare your FPR.

Sincerely,

Patricia Williams
Contracting Officer

# ATTACHMENT 2

NATIONAL SCIENCE FOUNDATION
DIVISION OF ACQUISIITON & COST SUPPORT
4201 WILSON BOULEVARD, ROOM 475
ARLINGTON, VIRGINIA 22230

(703) 292-4585
Fax (703) 292-9140/9141

MAR 20 2003

Integrated Business Solutions, Inc.
Carlton Joseph, COO
9320 Annapolis Road, Suite 200
Lanham, Maryland 20706

SUBJECT: Solicitation No. CPO-0200006, "Facilities Management Services"

Dear Mr. Joseph,

On behalf of the National Science Foundation (NSF), I regret to inform you that your proposal for the subject solicitation is ineligible for further consideration due to late submission.

In NSF's March 10, 2003 letter to IBS, your organization was given an opportunity to submit a final revised proposal no later than 10:30 A.M. on March 13, 2003. The letter specifically addressed the importance of the deadline: "Review Section A2 of the solicitation for critical delivery and deadline information. Any modification of a former offer received after the date and time specified above will be handled in accordance with the Late Proposals, Modifications of Proposals, and Withdrawals of Proposals provision of the solicitation (FAR 52.215-10)."

The IBS team request for an extension at 10:26 would have benefited only IBS, and could therefore not be granted in fairness to other offerors. IBS sent two emails containing final proposal revision files which were received by NSF's email server at 10:30.58 and 10:33.08. Your final revised proposal was received at 11:11 on March 13, 2003.

The solicitation included by reference FAR 52.215-1, "Instructions to Offerors -- Competitive Acquisition," with its Alternate II. Paragraph (c)(1) states:

> *Unless other methods (e.g., electronic commerce or facsimile) are permitted in the solicitation, proposals and modifications to proposals shall be submitted in paper media in sealed envelopes or packages (i) addressed to the office specified in the solicitation, and (ii) showing the time and date specified for receipt, the solicitation number, and the name and address of the offeror.*

Additionally Section L6.1 states:

> *Proposals shall be submitted in three-ring binders and shall be constructed and organized so as to allow removal, replacement, and addition of pages for deleted, amended or corrected, or additional information. Revised or added pages shall be a different color than the initial proposal, and be identified by bars and/or other notations in the page boarders.*

SUBJECT: Solicitation No. CPO-0200006, "Facilities Management Services" (Continued)

Section L6.2 required one copy on CD-ROM in addition to the seven paper copies.

The letter *requesting final proposal revisions explicitly asks for seven paper copies (an original* and six copies), but does not ask for a copy on CD-ROM. It also refers to Section A2 and the instruction for delivering proposals to NSF, mentioned above, and Section L6.1 for preparation instructions insofar as they concern the format for revisions to proposals. In recognition of the compressed delivery time for final proposal revisions, NSF informed all offerors at the oral presentations held during the week of March 3, and in Amendment 7, that only change pages were required as final proposal revisions. Electronic submission of the final proposal revision was clearly not authorized in the solicitation or in the request for final proposal revisions. In accordance with FAR 15.208(b), the final proposal revision was received late and could not be considered as it did not meet the exceptions at 15.208(b)(i)-(iii).

NSF also considered whether the original proposal submitted by IBS could still be considered. An initial proposal, however, cannot be considered an "otherwise successful proposal" if the government issued an amendment adding a requirement that the initial proposal did not address. Amendment 6, faxed to your organization on March 10, 2003 provided a substantial change in the period of performance. Amendment 7, containing an electronic version of the pricing schedule included in Amendment 6 and revised publication inventory levels, was sent via e-mail on March 12, 2003. From this I must conclude that the prices proposed in the initial proposal are no longer relevant. The initial proposal also does not adequately address areas of concern to the technical evaluation panel. Regretfully, I must therefore conclude that the initial proposal is ineligible for further consideration.

The Foundation thanks you for responding to the subject solicitation and looks forward to your participation in our future procurements.

Sincerely,

Patricia Williams
Contracting Officer

# ATTACHMENT 3

IBS
INTEGRATED BUSINESS SOLUTIONS, INC.
9320 Annapolis Road · Suite 200 · Lanham, MD 20706 · (301) 459-9100 · FAX (301) 731-6285

March 21, 2003

Ms. Patricia Williams
Contracting Officer
National Science Foundation
Division of Acquisition & Cost Support
4201 Wilson Boulevard, Room 475
Arlington, Virginia 22230

Subject: March 20, 2003 letter regarding Solicitation No. CPO-0200006, "Facilities Management Services"

Dear Ms. Williams:

This letter is in response to your telephone conversation this morning with Mr. Aubrey Stephenson, who called you on my behalf and with my consent, regarding questions and concerns I had pertaining to your letter dated March 20, 2003. During your conversation, you asked Mr. Stephenson to convey these questions in writing. This letter is in response to your request.

Specifically I asked Mr. Stephenson to seek clarification on two points:

1. The legal basis for stating that our initial, timely cost proposal is "ineligible for further consideration."

As you know, your letter requesting final proposal revisions, dated March 10, 2003, explicitly provides for NSF's consideration of original offers if no revisions are submitted. We have not withdrawn our initial proposal, nor have we notified NSF that our initial proposal should no longer be considered. Indeed, at our request our subcontractor, Federal Management Systems, Inc. (FMS), explicitly confirmed to NSF that our initial proposal should be considered if our revised electronic and paper submissions were not considered.

Moreover, neither the e-mailed version of the pricing schedule in Amendment 6, nor the revised publication inventory levels, nor the contract start date of April, 2003 were changes that were significant for purposes of our proposal. As you know, these were minor changes and, in the case of the revised start date, well known by us. These minor changes do not form the basis for NSF to ignore our existing pending proposal.

Nor do the four questions attached to your March 10 letter provide a basis for failing to consider our pending proposal. As you note in your March 10 letter, those questions were for our consideration as we prepared a revised proposal. They were not mandatory. They cannot now be made a basis for failing to consider a timely, pending submission properly before NSF.

Ms. Patricia Williams
Contracting Officer
Page 2

2. The basis for your conclusion that our revised offer was untimely.

Your March 20 letter concedes that NSF received a timely, complete electronic version of our revised proposal, conforming to all formatting requirements, within the time limits specified (i.e., at 10:30 a.m.) There is nothing in the solicitation which prohibits the electronic submission of best and final offers. Indeed, the vast majority of the information exchanged regarding this solicitation has been in electronic form. By way of example, your March 20 letter explicitly points to amendments, schedules, and inventory revisions which were conveyed in electronic form.

In the absence of an explicit prohibition against electronic submission, in light of the frequent and permitted use of electronic communications throughout this solicitation, and given the timely electronic submission of our revision, it is difficult to understand how either the Government, or any bidder, would be harmed by consideration of a timely, properly formatted, electronic proposal that gives value to the Government.

Indeed, FAR 15.208(b), which you cite in your March 20 letter, allows the Contracting Office to accept timely electronic submissions in this case, since it is not prohibited. FAR 15.208(a). Moreover, that Section 15.208 also allows for acceptance of our electronic or paper submission if the Contracting officer determines that accepting the electronic or paper proposal would not unduly delay the acquisition, and our proposal was under the control of the Government prior to the time set for receipt of proposals, which it clearly was in this case. FAR 15.208(b)(1)(ii).

Finally, FAR 15.208(b)(2) allows for a late modification of an otherwise successful proposal, that makes its terms more favorable to the Government, to be considered at any time it is received and accepted.

Therefore, we see no reason for NSF to refuse to consider our timely, existing proposal, or our timely electronic modification, in determining the best value of the Government.

We welcome an opportunity to meet with you to discuss this in greater detail. Neither the Government, nor any bidder, would be disadvantaged by your continued consideration of our original pending proposal, or your consideration of our timely electronic submission to our revised proposal, in determining the best value to the government. I look forward to meeting with you soon.

Sincerely,

Carlton Joseph
Vice-President & Chief Operating Officer

cc: Ms. Susan English
Mr. Aubrey Stephenson

# ATTACHMENT 4

NATIONAL SCIENCE FOUNDATION
DIVISION OF ACQUISIITON & COST SUPPORT
4201 WILSON BOULEVARD, ROOM 475
ARLINGTON, VIRGINIA 22230

MAR 25 2003

(703) 292-8242
Fax (703) 292-9140/9141

Integrated Business Solutions, Inc.
9320 Annapolis Road, Suite 200
Lanham, Maryland 20706
ATTN: Carlton Joseph,
Vice President and Chief Operating Officer

REF: NSF Solicitation No. CPO-0200006, "Facilities Management Services"

Dear Mr. Joseph:

Thank you for your letter of March 21, 2003, requesting clarification on your offer's ineligible status due to late submission.

The Foundation's letter of March 20, 2003, sets forth the basis for no longer considering the IBS offer. It is regrettable that the final proposal revision was late; nevertheless, given the circumstances surrounding its submission, FAR 15.208(b) and FAR 52.215-1(c)(3)(ii) (incorporated by reference at Section L1) do not permit its consideration. Also, given that your initial proposal does not address significant questions and amendments, it cannot be considered an otherwise successful proposal.

NSF respectfully declines your request for a meeting on the matter since the issues raised in your letter have been addressed. We appreciate your participation in NSF acquisitions.

Sincerely,

Bart Bridwell

Bart Bridwell
Contracting Officer

# ATTACHMENT 5

IBS

**INTEGRATED BUSINESS SOLUTIONS, INC.**
9320 Annapolis Road · Suite 200 · Lanham, MD 20706 · (301) 459-9100 · FAX (301) 731-6285

March 28, 2003

Mr. Bart Bridwell
Contracting Officer
National Science Foundation
Division of Contracts, Policy & Oversight
4201 Wilson Boulevard, Room 475
Arlington, Virginia 22230

Subject: Protest of NSF Decision Finding IBS's Current and Revised Proposals "Ineligible for Further Consideration" (Solicitation No. CPO-0200006, "Facilities Management Services")

Dear Mr. Bridwell:

This letter is a timely, formal protest of the decision by the National Science Foundation ("NSF") to rule both the timely existing proposal, and the revised proposal, of Integrated Business Solutions, Inc. ("IBS") "ineligible for further consideration due to late submission."

I. <u>NSF Has No Basis Under the Solicitation or the Law for Suddenly and Arbitrarily Refusing to Continue to Consider the Properly Submitted Original Proposal of IBS.</u>

A. <u>NSF is Acting Arbitrarily and Contrary to Its Own Instructions to Bidders By Refusing to Continue to Consider the Valid Original Proposal of IBS.</u>

Solicitation No. CPO-0200006 (the "Solicitation") is a Request for Proposals for a fixed prince contract to perform facilities management services at NSF. IBS submitted a timely proposal in response to the Solicitation and its proposal was accepted by NSF as timely and evaluated by NSF without objection.

On March 6, 2003, IBS was among a small group of finalists which were invited to participate in an oral question and answer session with NSF officials to discuss their proposals.

On March 10, 2003, NSF wrote a letter to IBS informing IBS that it would be given an opportunity to submit final proposal revisions and its best and final offer (Attachment 1). That letter reads in relevant part:

> The purpose of this letter is to inform you that all discussions have been concluded and as a result the National Science foundation requests that you submit your final proposal revision (FPR). The FPR gives your organization an opportunity to submit its best terms from a technical and cost/price standpoint.

NSF's March 10 letter goes on to make it clear that finalists have the option to stand by their current offers and submit no changes to their original proposals, or they may submit revised proposals. NSF also makes it clear that it is not mandatory that the three questions attached to the March 10 letter be answered by IBS. The questions were purely for consideration by IBS as it considered its final offer. NSF's letter continues in relevant part:

> You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. *If no revisions are made to your original offer, confirm that the offer remains unchanged*. (Emphasis added). Attached are CPO-0200006, Amendment No. Six, and additional questions *for your consideration* as you prepare your FPR.

Therefore, NSF expressly provides for the possibility that one or more bidders may want to make no changes to their original proposals. Indeed, NSF provides instructions for bidders who wish to do just that.

There is nothing in NSF's March 10 letter, nor in the RFP, which justifies NSF now penalizing and suddenly rendering "ineligible for further consideration" a previously valid proposal simply because a bidder chooses to exercise its right to stand by its original proposal.

On March 13, 2003, by the stated deadline of 10:30 a.m., IBS submitted a timely and properly formatted revised proposal to NSF in electronic form. A paper copy of the same revised proposal was delivered a short time later.

On March 20, 2003, NSF wrote a letter to IBS informing it that its original proposal, and its revised proposal, were now "ineligible for further consideration due to late submission." (Attachment 2)

NSF based this arbitrary decision on several conflicting rationales.

First, NSF stated that IBS's original proposal, which already had been accepted and successfully evaluated by NSF, and which IBS was entitled to leave unchanged, was now "ineligible for further consideration" because NSF "issued an amendment adding a requirement that the initial proposal did not address."

The "requirement" cited by NSF was Amendment 6, which NSF stated was a "substantial change in the period of performance." NSF also cited Amendment 7, which contained an electronic version of the pricing schedule included in Amendment 6, and a revised publication inventory.

Without stating what, if any, unaddressed "requirements" these two amendments contained, NSF then abandoned this argument and, in the following sentence, adopted a new rationale for refusing to consider IBS's existing proposal, namely, "[IBS's] prices proposed in the initial proposal are no longer relevant."

It is unclear how prices bid by IBS on a fixed price contract became irrelevant.

At no point has IBS withdrawn its original proposal; nor has IBS notified NSF that its initial proposal should no longer be considered. Indeed, at IBS's request, Federal Management Systems, Inc. (FMS), explicitly confirmed to NSF that IBS's initial proposal should be considered if its revised electronic and paper submissions were not accepted.

In a final attempt to justify its sudden, arbitrary disqualification of IBS, NSF rationalized that "[IBS's] initial proposal also does not adequately address areas of concern to the technical evaluation panel."

However, NSF's newest rationale collides with the express instructions contained in its own March 10 letter. In that letter, NSF makes it clear that the questions put to IBS were not mandatory, but were only "for [IBS's] consideration." Moreover, in the same paragraph, NSF explicitly allows for bidders to leave their original offers unchanged, and still have them considered.

> You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. *If no revisions are made to your original offer, confirm that the offer remains unchanged*. (Emphasis added). Attached are CPO-0200006, Amendment No. Six, and additional questions *for your consideration* as you prepare your FPR.

According to NSF officials, the questions raised were completely answered to NSF's satisfaction by IBS in its oral presentation. Present at this meeting were the Contracting Officer and the Contracting Officer's Technical Representative.

NSF cannot have it both ways. It cannot inform bidders in writing that they can stand by their original proposals, and then penalize them by refusing to consider those same proposals when bidders elect this option. Such agency behavior is arbitrary, unlawful, and a clear a violation of the very rules set out by NSF itself.

NSF also claims that the e-mailed versions of the pricing schedule in Amendment 6, the revised publication inventory levels, and the contract start date of April, 2003 were significant changes that were not addressed in IBS's original proposal. Therefore, NSF reasons, the original proposal can no longer be considered.

However, none of these changes were "requirements" of the contract. Each of them was addressed during IBS's oral question and answer period with NSF. The revised start date has been long known to IBS and others, and the revised inventory levels and pricing schedule had little impact on IBS's revised price or technical proposals. None of these "requirements" were significant, and IBS has the right to have its original proposal considered in making this award.

The simple truth is that none of these allegedly "significant questions and amendments" justify NSF's arbitrary refusal to consider the valid, timely and properly submitted original proposal

now pending before NSF.

On March 21, 2003, IBS wrote a letter seeking clarification of NSF's March 20 letter, challenging the basis for NSF's decision, and seeking a meeting to discuss the issue. In a letter dated March 25, 2003, NSF simply referred IBS to the rationale contained in its March 20 letter and declined to meet with IBS. This protest followed.

## II. The Revised Proposal Was Timely and Proper Since the Solicitation Does Not Prohibit Electronic Submissions.

### A. This Solicitation Has Permitted the Frequent Use of Electronic Communications to Transfer Information to NSF and is, Therefore, Authorized.

NSF's March 20 letter also claims that IBS's revised proposal was late. NSF concedes that IBS's electronic version of the revised proposal was received by the stated deadline. However, NSF claims that electronic submissions are not authorized and, therefore, cannot be accepted.

NSF points to nothing in the Solicitation which prohibits electronic submissions. Indeed, most of the information exchanged during this Solicitation has been distributed in electronic form. NSF's March 20 letter explicitly points to amendments, schedules, and inventory revisions which were electronically conveyed.

In the absence of an explicit prohibition against electronic submission, in light of the frequent and permitted use of electronic communications throughout this solicitation process, and given the timely electronic submission of IBS's revised proposal, it is difficult to understand how either the Government, or any other bidder, would be harmed by consideration of a timely, properly formatted, electronic submission of a revised proposal that gives the best value to the Government.

Indeed, FAR 15.208(b), which NSF cites in its March 20 letter, allows the Contracting Office to accept timely electronic submissions in this case, since electronic submissions are not prohibited. FAR 15.208(a). Moreover, Section 15.208 also allows for acceptance of IBS's submission if the Contracting officer determines that accepting the electronic or paper proposal would not unduly delay the acquisition, and IBS's proposal was under the control of the Government prior to the time set for receipt of proposals, which its electronic submission clearly was. FAR 15.208(b)(1)(ii).

Finally, FAR 15.208(b)(2) allows for a late modification of an otherwise successful proposal, that makes its terms more favorable to the Government, to be considered at any time it is received and accepted.

Therefore, there is no reason for NSF to refuse to consider IBS's valid, existing proposal, or its timely electronic revised proposal, in determining the best value of the Government.

IBS, therefore, respectfully requests that IBS's original and revised proposal be immediately considered for award of this contract. IBS further requests that any award be delayed pending the final determination of this protest.

Sincerely,

Carlton Joseph
Vice President & Chief Operating Officer

cc: Ms. Susan English
Mr. Aubrey Stephenson

Attachments

# ATTACHMENT 6

**NATIONAL SCIENCE FOUNDATION**
4201 WILSON BOULEVARD
ARLINGTON, VIRGINIA 22230

APR 17 2003

Carlton Joseph
Vice President & Chief Operating Officer
Integrated Business Solutions, Inc.
9320 Annapolis Road, Suite 200
Lanham, Maryland 20706

Re: Agency-level protest of Integrated Business Solutions

Dear Mr. Joseph:

This is in response to your letter dated March 28, 2003, in which Integrated Business Solutions, Inc. (IBS) protested the contracting officer's decision to: (1) eliminate IBS's initial proposal from further consideration; and (2) reject IBS's Final Proposal Revision (FPR) for lateness.

Based on my review, I have determined that the contracting officer properly eliminated IBS's initial proposal from further consideration because the FPR revoked the initial proposal, IBS failed to confirm its initial proposal, and IBS's initial proposal is not an "otherwise successful offer." I also find that the contracting officer properly rejected IBS's FPR as it was received by the agency after the proposal deadline. For these reasons, IBS's protest is denied in full.

## I. SUMMARY OF THE FACTS

The National Science Foundation (NSF) issued solicitation No. CPO-0200006, Facilities Management Services, on July 17, 2002. IBS was one of four offerors that submitted initial proposals that were determined to be within the competitive range. One offeror subsequently withdrew its proposal. The contracting officer then conducted oral and written discussions with the three remaining companies. Following discussions, the agency, in a letter dated March 10, 2003, requested FPRs from the offerors. If an offeror elected not to submit a FPR, it was instructed to confirm its initial proposal. The agency specified March 13, 2003, 10:30 a.m., eastern standard time (EST)[1] as the deadline for receipt of FPRs. Attached to the same letter, the contracting officer also issued Amendment 06 (A06) that, among other things, revised the period of performance for the contract from November 15, 2002, through November 14, 2009, to April 1, 2003, through March 31, 2010. On March 12, 2003, the contracting officer issued Amendment 07 (A07), which reiterated previous instructions concerning submissions of FPRs, and provided information concerning a reduced publication inventory requirement.

On March 13, 2003, NSF received timely FPRs from Elite Management Services, Inc. and Glencor Services, Inc. by hand-delivery at 9:40 a.m. and 10:20 am, respectively.

---

[1] All times mentioned in this document refer to eastern standard time (EST).

NSF received IBS's hand-delivered FPR at 11:11a.m., 41 minutes after the deadline. At 10:30 a.m., NSF received an incomplete FPR by e-mail from IBS that contained only the technical proposal. At 10:32 a.m., NSF received the remainder of the protester's FPR.

On March 20, 2003, the contracting officer notified IBS that its FPR would not be considered because of lateness. The same letter also notified protester that IBS's initial proposal would not be considered for award.

## II. LEGAL DISCUSSION

### A. The Contracting Officer Properly Eliminated IBS's Initial Proposal for Contract Award.

As a general rule, once an offeror submits an FPR, the award must be based on the FPR and not upon the prior version of the proposal. *Department of the Army—Recon.*, B-251527.3, 93-2 CPD P 178 (1993). The General Accounting Office (GAO) has held that the submission of an FPR demonstrates an offeror's intent to modify or replace its initial proposal, and thus, operates to extinguish the agency's right to accept the earlier offer. *Id.* Likewise, even when the FPR is not eligible for consideration due to lateness, it still operates as a revocation of the initial proposal. *Touchstone Textiles, Inc.*, B-272, 230.4 96-2CPD 107 (1996) (a late FPR demonstrates an intent by the offeror to replace its initial proposal). Moreover, an initial proposal cannot be accepted where it does not commit the offeror to a requirement added by amendments to the solicitation subsequent to receipt of initial proposals. *Environmental Control Division, Inc.*, B-255, 181, 94-1 CPD P 115 (1994) (GAO concluded that the offeror's initial proposal could not be considered an "otherwise successful proposal" because it did not commit the offeror to the change in work hours that resulted from a subsequent amendment to the solicitation).

The record in this case shows that NSF, in the March 10th letter, requested FPRs from the three remaining offerors. In the event that an offeror elected not to submit an FPR, the letter instructed the offeror to confirm its initial proposal. In other words, each offeror had the option of submitting an FPR or proceeding with its initial proposal. It is undisputed that IBS elected to submit an FPR.[2] (Whether that FPR is untimely is another issue addressed later in this memorandum).

As dictated by GAO decisions cited above, IBS's FPR submission revoked the initial offer. When this occurs, the agency is not free to consider the terms of the prior proposal -- regardless of whether the subsequent revision was timely. IBS's alleged confirmation to the agency that it was proceeding with its initial proposal if the FPR was not accepted does not vitiate its intent to replace its initial offer by submitting an FPR.

Further, assuming IBS had not submitted an FPR, the initial proposal could not be considered, as IBS failed to confirm its initial offer as required by the agency. IBS alleged in its protest that, Federal Management Systems, Inc., a proposed subcontractor,

---

[2] IBS does not dispute that it submitted a FPR. Rather, it claims that the FPR was properly submitted and should be considered. *See, IBS Protest*, p.2.

verbally confirmed with NSF its desire to proceed with the initial offer if the FPR was not accepted. *IBS Protest*, p. 3. IBS (the offeror for this solicitation) was required to confirm the initial proposal if it so chose, not the proposed subcontractor-- a non-interested party to this protest.

In addition, the contracting officer properly eliminated IBS's initial proposal from further consideration because the initial proposal did not address issues raised during negotiations or commit IBS to requirements added to the solicitation after the initial proposal was submitted. For example, following initial proposal submission, Amendment 06 revised the period of performance for the contract from November 15, 2002, through November 14, 2009, to April 1, 2003, through March 31, 2010. Amendment 07 provided information concerning a reduced publication inventory. These requirements, which IBS could not have taken into consideration in the initial proposal, may substantially affect an offeror's contract price.

### B. The Contracting Officer Properly Rejected IBS's Final Proposal Revision For Untimeliness.

Proposals, modifications, and final proposal revisions received after the time specified for receipt of such submissions – even if by only a few minutes -- are considered late. FAR § 15.208(b); *Environmental, supra*, (offeror's hand-delivered final proposal was rejected for being 4 minutes late). Under these circumstances, the contracting officer will not consider any late proposals unless (1) an electronic copy (if authorized) was received by the government by 5:00 p.m. one working day prior to the deadline for receipt of proposals; (2) the government's action was the paramount cause of the late receipt; or (3) the late submission was the only proposal the government received. FAR § 208(b)(1)(i)-(iii).

IBS does not dispute that the government received IBS's hand-delivered FPR after the 10:30 a.m. deadline. Further, IBS does not contend that the government caused the untimely receipt. IBS only argues that the electronic version of its FPR submitted by e-mail was received on time by NSF; and therefore, should be considered. *IBS Protest*, pp. 4-5. Specifically, IBS argues that because nothing in the solicitation prohibits an offeror from submitting an FPR in electronic form, and because "most of the information exchanged during this [s]olicitation has been distributed in electronic form," its electronic FPR represents a timely submission.

The contracting officer properly rejected IBS's FPR submitted by e-mail because that method of transmission was not explicitly authorized. According to the FAR and GAO decisions, an acceptable method of transmitting (e.g., by regular mail, electronic commerce, or facsimile) proposals, modifications or final proposal revisions to the government is one that is explicitly authorized by the procuring agency. FAR § 15.208(a); *Environmental Control Division*, Inc., B-255, 181, 94-1 CPD P115 (1994) (GAO ruled in favor of an agency's decision to reject protester's FPR submitted by facsimile where the solicitation did not explicitly authorize facsimile as a method of transmission). Moreover, the required authorization must be in writing and cannot be

inferred by conduct or verbal assurances from government contracting officials. *G.D. Searle & Company*, B-247, 077, 92-1 CPD P 406 (1992) (absent explicit authorization in the solicitation or an amendment, a contracting officer's verbal assurance that a protester may transmit its offer by facsimile fails to constitute proper authorization).

It is undisputed that IBS's paper copy FPR was received by NSF 41 minutes after the deadline. IBS's assertion that e-mail transmission was authorized because it was not specifically prohibited is simply contrary to well-settled law. IBS has failed to establish, nor is there any evidence in the record, that NSF authorized electronic transmission of offers or modifications. Further, even if NSF had authorized e-mail transmission, IBS's FPR was late, as the agency did not receive protester's e-mail by 5 p.m. the day before the deadline in accordance with FAR 15.208(b)(1)(i).

Even if NSF had authorized receipt of FPRs by e-mail for the 10:30 a.m. deadline, the contracting officer would still be justified in rejecting IBS's partial submission. *See, Matter of Cyber Digital, Inc.*, B-270, 107, 96-1CPD P 20 (1996) (agency was not required to consider offeror's best and final offer where only 8 of 19 pages were received on time). IBS's first e-mail, received by NSF at 10:30 a.m., contained only the technical portion of the FPR. A subsequent e-mail from IBS, received by NSF at 10:32 a.m., contained the cost proposal for IBS's final offer. Accordingly, even working under the hypothetical scenario most favorable to IBS -- that NSF authorized e-mail transmission of proposals, modifications or final proposal revisions -- , the FPR was still untimely as the cost proposal was submitted after the specified deadline.

## III. DECISION

For the foregoing reasons, I find that the contracting officer's decisions in this matter are reasonable and in accordance with procurement law and regulations. Therefore, the protest is denied in full.

This is NSF's final decision on this matter. If you are dissatisfied with the decision you may file a protest with the General Accounting Office within 10 calendar days of your receipt of this letter.

Sincerely,

Thomas N. Cooley

Thomas N. Cooley
Director, Office of Budget, Finance
and Award Management

# ATTACHMENT 7

# AFFIDAVIT
# OF
# DR. ABE KELLIZY

I, Dr. Abe Kellizy, am over the age of 18 and competent to testify to the matters contained herein:

1. On March 13, 2003, I was the duly designated representative of IBS in relation to its bid submission to the National Science Foundation (NSF) for Solicitation No. CPO-0200006 (Facilities Management Services).

2. On Mar 13, 2003, I arrived at the NSF office designated for receipt of best and final offer (BAFO) submissions for this solicitation and submitted a paper version of IBS's BAFO to Ms. Kristin Spencer, a representative of the NSF contracting office.

3. Ms. Spencer took the paper version of the BAFO, told me to wait, or words to that effect, and left the room, returning shortly with Ms. Patricia Williams, a NSF contracting officer who had participated in the oral discussions with IBS on March 6, 2003

4. When they arrived, Ms Williams said, "You know it's late," or words to that effect. I explained to them both that IBS had requested an extension of the submission deadline and had also submitted its BAFO via e-mail. I further stated that if the submission were late, or the extension was not granted, IBS's original proposal should be evaluated and considered in its place, or words to that effect.

5. Ms. Williams said, "We'll see," or "We'll get back to you," or words to that effect. She also indicated that I would need to speak to Mr. Bart Bridwell when he returned from leave. I then left the building.

I affirm under the penalty of perjury that the contents of the foregoing statement are true and correct.

Dr. Abe Kellizy

April 28, 2003