**NATIONAL SCIENCE FOUNDATION**
**4201 Wilson Boulevard**
**Arlington, VA 22230**
**(703) 292-8060**

**Office of the General Counsel**

MAY 2 8 2003

Tania Calhoun
Acting Deputy Assistant General Counsel
Office of the General Counsel
U.S. General Accounting Office
441 G. Street, N.W. 1139
Washington, D.C. 20548

Re: Protest of Integrated Business Solutions, Inc.
B-292239

Dear Ms. Calhoun:

In response to the protest filed by Integrated Business Solutions, Inc. (IBS or protester) on April 28, 2003, the National Science Foundation (NSF or agency) submits the following legal memorandum and administrative report. For the reasons stated below, the agency respectfully requests that the General Accounting Office (GAO) deny the protest.

## I. STATEMENT OF FACTS

The National Science Foundation issued solicitation No. CPO-0200006, Facilities Management Services, on July 17, 2002 as a competitive 8(a) set-aside. Agency Report (AR) Tab 1, *Solicitation*. The solicitation included eight fixed-price CLINs:

- CLIN 001 – Mailroom Services
- CLIN 002 – Reproduction Services
- CLIN 003 – Grant Proposal Processing Services
- CLIN 004 – Shipping, Receiving, and Conference Support Services
- CLIN 005 – Chauffeur Services
- CLIN 006 – Supply Services
- CLIN 007 – Publication Fulfillment Services
- CLIN 008 – Warehouse Services

A ninth CLIN (CLIN 009) sought fixed hourly labor rates for work performance of a similar nature in addition to the work specified by the work statement, or to address

unanticipated work demands that might occur through no fault of the contractor. One fixed price, award term contract, including a core performance period of 36-months and four, 12-month award term incentives was solicited. The total performance period, including all award term incentives, is for 84 months. NSF estimated the value of this acquisition at $11,125,766, not including the value of any services ordered per CLIN 009.

IBS was one of four offerors that submitted initial proposals that were determined to be within the competitive range. In its proposal, IBS proposed Federal Management Systems, Inc. (FMS) as a subcontractor for this procurement. AR Tab 2, *IBS Initial Proposal, Volume II, Section 1.3, Introducing Federal Management Systems, Inc.* When negotiations were concluded, NSF, in a letter dated March 10, 2003, requested Final Proposal Revision (FPR, formerly known as Best and Final Offers or BAFO) from the remaining offerors. AR Tab 3, *Request for Final Proposal Revisions*, dated March 10, 2003. The agency specified March 13, 2003, 10:30 a.m., eastern standard time (EST) as the deadline for receipt of FPRs. *Id.* If an offeror elected not to submit a Final Proposal Revision, it was instructed to confirm its initial proposal. *Id.* Specifically, the March 10th letter stated

> "You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. If no revisions are made to your original offer, confirm that the offer remains unchanged." *Id.*

Attached to the same letter, the Contracting Officer also issued Amendment 06 (A06) that, among other things, revised the period of performance for the contract from November 15, 2002, through November 14, 2009, to April 1, 2003, through March 31, 2010. *Id.* On March 12, 2003, the Contracting Officer issued Amendment 07 (A07), which reiterated previous instructions concerning submissions of FPRs, and provided information concerning a reduced publication inventory requirement. AR Tab 4, *Amendment 07.*

On March 13, 2003, NSF received timely FPRs from Elite Management Services, Inc. and Glencor Services, Inc. by hand-delivery at 9:40 a.m. and 10:20 am, respectively. As the 10:30 a.m. deadline approached, Kristin Spencer, an NSF Contracting Specialist, received a telephone call from Dr. Abe Kellizy, an FMS employee, requesting a one-hour extension to deliver IBS's FPR. AR Tab 5, *Affidavit of Kristin Spencer.* Ms. Spencer advised Dr. Kellizy that his request was unlikely to be granted as it was very close to the deadline, and that it would be unfair to the other offerors who submitted their proposals on time. *Id.* After conferring with Patricia Williams, NSF Contracting Officer and Section Head, Ms. Spencer informed Dr. Kellizy that his request for an extension was denied.[1] *Id.*

In addition to requesting for an extension by telephone, Dr. Kellizy sent the following e-mail at 10:26 a.m.

[1] Ms. Spencer was assisting Bart Bridwell, Contracting Officer, on this procurement. Mr. Bridwell was on a previously scheduled conference call elsewhere in the building at the time and date the FPRs were due.

"Ms. Spencer,

We are en route to deliver proposal for IBS/FMS.
We request a 1 hour extension of deadline.
Thank you.

Abe Kellizy, PH.D.
Senior Associate
Federal Management System, Inc."

AR Tab 6, *E-mail from Dr. Kellizy to Kristin Spencer.*

At 10:30 a.m., NSF received an incomplete FPR by e-mail from IBS/FMS that contained only the technical proposal. AR Tab 7, *E-mail From Caleb Brutus to Kristin Spencer (Technical Proposal).* The e-mail was sent from Caleb Brutus [cbrutus@FMSHQ.com], with the subject line "IBS-FMS Technical attached until physical delivery." *Id.* At 10:32 a.m., NSF received the remainder of the protester's FPR from the same sender with the subject line "IBS-FMS Cost Proposal attached until physical delivery." AR Tab 8, *E-mail From Caleb Brutus to Kristin Spencer (Cost Proposal).*

NSF received IBS's hand-delivered Final Proposal Revision at 11:11a.m., 41 minutes after the deadline. AR Tab 9, *Receipt Confirmation for Proposal of IBS.* Both Mses. Williams and Spencer were present at the time Dr. Kellizy arrived at the NSF building to deliver IBS's FPR. Ms. Williams informed Dr. Kellizy that the proposal was late and requested that he take the proposal to the NSF mailroom for inspection. AR Tab 10, *Affidavit of Patricia Williams.* Neither Mses. Williams or Spencer recall at any time during their interaction with Dr. Kellizy that he made a statement, in writing or verbally, confirming IBS's initial proposal. AR Tabs 5 and 10. Furthermore, both NSF officials did not recall Dr. Kellizy ever making any statements to the effect that NSF should consider IBS's initial proposal if the revised proposal was rejected for being untimely. *Id.*

On March 20, 2003, the Contracting Officer notified IBS that its FPR would not be considered because of lateness. The same letter also notified the protester that IBS's initial proposal would not be considered for award. AR Tab 11.

On March 21, 2003, Aubrey Stephenson, President, FMS, contacted Ms. Williams to discuss NSF's decision in this matter. AR Tab 10, *Affidavit of Patricia Williams.* Ms. Williams informed Mr. Stephenson that it would be inappropriate for her to discuss the matter with officials from a proposed subcontractor. *Id.* She also informed him that any inquiry concerning this matter should be submitted by IBS. *Id.*

In a letter dated March 21, 2003, Mr. Carlton Joseph, Vice President & Chief Operating Officer, IBS, requested clarification of NSF's decision as stated in the March 20th letter. Mr. Joseph also requested to meet with NSF officials to further discuss the matter. AR Tab 12. In a letter dated March 25, 2003, the Contracting Officer declined IBS's request to meet. In the same

letter he also reiterated the agency's decision to reject protester's FPR for lateness and to eliminate its initial proposal from further consideration. AR Tab 13. The Contracting Officer, in accordance with FAR 15.208(h)(2), documented NSF's rationale for its decisions in a memorandum dated March 28, 2003. AR Tab 14, *Contracting Officer's Memorandum*, dated March 28, 2003.

On March 28, 2003, IBS submitted an agency level protest to the Contracting Officer. IBS asserted that NSF: (1) "arbitrarily refus[ed] to continue to consider the properly submitted original proposal of IBS", and (2) IBS's revised proposal should be considered because "[it] was timely and proper since the solicitation does not prohibit electronic submissions." AR Tab 15, *IBS Agency Level Protest.*

In a letter dated April 2, 2003, the agency confirmed receipt of IBS's agency level protest and informed the protester that it may elect to have the matter resolved by an NSF independent reviewer at a level above the Contracting Officer. AR Tab 16. The Contracting Officer further advised IBS that NSF's Director, Office of Budget, Finance, and Award Management and Chief Financial Officer would serve as the independent reviewer, and that, his determination represents NSF's final decision on this matter. *Id.* IBS opted to have its protest resolved at a level above the Contracting Officer. AR Tab 17.

In accordance with NSF internal procedures, the Contracting Officer submitted the administrative report and legal memorandum to the NSF reviewing official. On April 17, 2003, the NSF reviewing official denied IBS's protest on both issues. AR Tab 18, *NSF Agency Level Protest Decision.* He concluded that the Contracting Officer properly eliminated protester's initial proposal from further consideration on the following grounds: (1) IBS's FPR revoked its initial proposal; (2) IBS failed to confirm its initial proposal; and (3) IBS's initial proposal is not an "otherwise successful offer." *Id.* The NSF reviewing official also found that IBS's FPR was late as it was received by the agency after the proposal deadline. *Id.*

## II. AGENCY DECISIONS UNDER PROTEST

On April 28, 2003, IBS filed a protest with GAO challenging NSF's decision to (1) eliminate its initial proposal from further consideration, and (2) reject IBS's Final Proposal Revision for lateness.

Concerning the first protest ground, the protester argues that its FPR cannot be construed as a revocation of its initial offer because "[IBS] explicitly notified NSF that its original proposal would serve as its offer <u>if</u> its revised proposal were ruled untimely...." *IBS Protest*, p. 6. (emphasis added). Further, IBS alleges that by refusing to consider its properly submitted initial proposal, NSF acted arbitrarily and contrary to its own instructions. *Id.* at 9.

On the second protest ground, IBS contends that the electronic version of its FPR was submitted on a timely basis. Specifically, it argues that nothing in the solicitation prohibits an offeror from submitting a revised proposal by e-mail. *Id.* at 12.

## III. LEGAL ANALYSIS

A. NSF Properly Eliminated IBS's Initial Proposal From Further Consideration Because the FPR Revoked the Initial Proposal, IBS Failed To Confirm Its Initial proposal, And IBS's Initial Proposal Is Not An "Otherwise Successful Offer."

1. The Final Proposal Revision Revoked the Initial Offer.

As a general rule, once an offeror submits a final proposal revision, the award must be based on the FPR and not upon the prior version of the proposal. *Department of the Army—Recon.*, B-251527.3, 93-2 CPD P 178 (1993). The General Accounting Office has held that the submission of an FPR demonstrates an offeror's intent to modify or replace its initial proposal, and thus, operates to extinguish the agency's right to accept the earlier offer. *Id.* Moreover, even when the FPR is not eligible for consideration due to lateness, it still operates as a revocation of the initial proposal. *Touchstone Textiles, Inc.*, B-272, 230.4, 96-2CPD 107 (1996) (a late FPR demonstrates an intent by the offeror to replace its initial proposal).

IBS attempts to argue around the GAO decisions cited above by arguing that its FPR, unlike the "unconditional" BAFO in *Touchstone Textiles*, was a "conditional" Final Proposal Revision (contingent upon NSF accepting it); and therefore, does not demonstrate the required intent by an offeror to revoke its initial proposal. *IBS Protest*, pp. 1-2. IBS also argues that the conditional statement that its designated representative allegedly made to NSF officials negated any implied intent inferred by its FPR submission. *Id.*

IBS's arguments relies heavily on a single statement that its representative purportedly made to the effect that its original proposal would serve as its offer if its revised proposal were determined to be untimely. *IBS Protest*, pp. 1, 3, and 6.

As an initial matter, NSF did not request nor does FAR Part 15.307 permit offerors to submit a "conditional" Final Proposal Revision. The offerors were simply given an opportunity to submit FPRs or confirm their initial proposal. AR Tab 3. Proposing both options, with one taking precedent over the other, based on the occurrence of a condition subsequent (i.e., NSF rejecting the FPR), is simply not responsive to the instructions provided by the agency, nor the plain meaning of the term "Final Proposal Revisions."[2]

The central issue here is not what type of offer protester labels its FPR. It is a question of the protester's intent -- as can be surmised by the undisputed record. It is undisputed that IBS submitted a revised proposal. This fact alone is enough to demonstrate IBS's intent to revoke its prior offer. *See*, *Touchstone Textiles*, *supra*.

However, in addition to submitting an FPR, IBS's efforts to meet the 10:30 a.m. deadline further illustrates its intent to proceed with its revised proposal instead of its initial offer.

[2] Proceeding under the scenario that IBS is arguing leads to an absurd result that would conceivably allow offerors to submit a Final Proposal Revisions, conditioned on the government scoring favorably its revised technical approach, and if not, the agency is to evaluate its initial terms.

Tellingly, about 5 minutes before the deadline expired, IBS was still endeavoring to timely submit its FPR by requesting, once over the telephone and the other request via e-mail, a one-hour extension. When it became apparent that IBS could not hand deliver its FPR on time, an FMS employee attempted to meet the deadline by submitting two separate e-mails that contained various portions of its FPR – albeit untimely as well.

Although IBS's intent is quite obvious from the record, it argues that any intent demonstrated by IBS's submission of an FPR is negated by a statement allegedly made to NSF officials that "[IBS's] original proposal should be considered for award if NSF failed to grant a requested extension or ruled the revised proposal untimely." *IBS Protest*, p. 1 and 6.

Aside from the fact that such a statement is non-responsive to the agency's instructions as mentioned above, this argument is unpersuasive for a number of other reasons. First, none of the NSF officials who interacted with Dr. Kellizy, via telephone, e-mail, or in person, recall Dr. Kellizy making any statements to the effect that IBS wished to proceed with its initial offer if its revised proposal was deemed untimely. AR Tab 5, *Affidavit of Kristin Spencer*, ¶ 9; AR Tab 10, *Affidavit of Patricia Williams*, ¶ 8.

Secondly, assuming that Dr. Kellizy stated that IBS was proceeding with its initial proposal, he was not authorized to make such a determination – as he was an employee of a proposed subcontractor. A subcontractor is not an "interested party" to a procurement unless the subcontract is "by or for the government." 4 C.F.R. § 21.0(a) (defines interested party as a "actual or prospective bidder"); *Northwest Piping, Inc.*, B-230,769, 88-1 CPD P 333 (1988); *PolyCon Corporation*, B-218,304, 85-1 CPD P 567 (1985).

Analogous to GAO's treatment of subcontractor protests is the position that a proposed subcontractor lacks standing to alter the terms of an offer made by an actual bidder. There is nothing in the record which indicates that protestor designated Dr. Kellizy to act on its behalf in making business-related decisions concerning its proposal. In fact it was not until the filing of this protest, and after the fact that the agency raised the subcontractor issue in its agency level protest decision, did IBS start referring to Dr. Kellizy as an IBS designated official.

Thirdly, assuming that Dr. Kellizy was authorized to act on behalf of IBS, and had made the statement as alleged, it would confirm rather than vitiate IBS's intent to replace its initial proposal with its revised offer.

Had IBS actually made a timely, unequivocal statement advising NSF that it wished to proceed with the initial proposal *regardless* of whether NSF decides to accept the FPR, protester's argument would make more sense. Rather, what Dr. Kellizy purportedly stated further reveals that IBS's intent was to have its FPR considered by NSF (as a first option); and only if NSF decides to reject the revised proposal, would it then proceed with its initial proposal as a last resort.

2. IBS Failed to Confirm Its Initial Offer.

Where an offeror submits its final proposal revision late, and the initial proposal has expired, there exist no offer in which the agency may accept. *Department of the Army—Recon.* In this case, because IBS's FPR was late, and it did not confirm its initial offer, there is likewise no offer in which NSF may accept.

There is no evidence in the record that shows IBS confirmed its initial proposal, as it was required to do if it elected not to submit a Final Proposal Revision. IBS's contention that it had confirmed its initial proposal is based on a single alleged statement (i.e., IBS was proceeding with its initial terms if NSF rejected its final offer) that was made subsequent to being informed that its FPR was late. Even if Dr. Kellizy had indeed made such a statement, a *conditional* confirmation does not adequately convey to NSF IBS's intention of proceeding in this solicitation with its initial offer.

In addition to delivering its FPR late, submitting its e-mail copy late (as fully discussed later in this memorandum), IBS's alleged confirmation statement was also late. IBS contends that NSF failed to specify a deadline for offerors to confirm its initial proposal by arguing that instructions concerning initial offers appear two paragraphs after the paragraph where NSF set forth the deadline for receipt of Final Proposal Revisions. *IBS Protest* pp. 8-9

There is nothing inappropriate or unclear about the agency's instructions in the March 10th letter. FAR §15.307 only requires that the Contracting Officer specify a deadline for receipt of Final Proposal Revisions. Moreover, because the deadline for FPRs and instructions for confirming initial proposal appear in the same letter, there is no reasonable basis for IBS to believe that the deadline for confirming initial offers was set for another date.

Even if there was no deadline for confirmation of initial proposals, IBS concedes that "confirmation must be received within a reasonable time." IBS *Protest* pp. 8-9. The protester then goes on to argue that its confirmation occurred minutes after the FPR deadline. *Id.* at 9.

Contrary to the protester's assertion, (and again working under a number of assumptions that is most favorable to the protester) IBS did not confirm its initial proposal within minutes but 7 days after the FPR deadline. NSF made its decision to reject IBS's FPR on March 20, 2003, 7 days after the March 13, 2003 deadline. According to IBS's own statement, it was proceeding with its original proposal only if NSF decided to reject its FPR. It is undisputed that NSF did not reject IBS's FPR for lateness until March 20.

3. IBS's initial proposal was not an "otherwise successful offer."

An initial proposal cannot be accepted where it does not commit the offeror to a requirement added by amendments to the solicitation subsequent to receipt of initial proposals. *Environmental Control Division, Inc.*, B-255, 181, 94-1 CPD P 115 (1994) (GAO concluded that the offeror's initial proposal could not be considered an "otherwise successful proposal" because

it did not commit the offeror to the change in work hours that resulted from a subsequent amendment to the solicitation).

Subsequent to receiving initial proposals, the agency issued Amendment 06 that revised the period of performance for the contract from November 15, 2002, through November 14, 2009, to April 1, 2003, through March 31, 2010. AR Tab 3.

Although the length of the contract remains 84 months (or 7 years), the offerors were required to commit to a different contract time frame as a result of A06. The new time frame requires that IBS be available to perform under this contract 4.5 months beyond its original contract completion date commitment (i.e., contract now ending on March 31, 2010 versus the previous contract completion date of November 14, 2009). Although IBS may elect not to revise its initial proposal concerning technical or cost factors, it was required to confirm its initial offer, and thus, commit to a period of performances through March 31, 2010 -- which it failed to do.

B. NSF's Decision to Eliminate IBS's Initial Proposal Was Reasonable and In Accordance With GAO Precedent.

In its protest, IBS alleges that NSF acted in an arbitrary manner and in contravention of its instructions by not considering IBS's original proposal. In order to demonstrate that an agency decision was arbitrary, a protester must show that the agency action was clearly unreasonable. *The Saxon Corp.*, B-232694, 89-1 CPD 17 (1989); *System Development Corporation and Cray Research, Inc.*, B-288662.2, 84-1 CPD P368 (1984) (an agency action is arbitrary and capricious if there was no reasonable basis for the action). In order to prevail, a protester much also demonstrate that it was prejudiced by the arbitrary conduct. *Indian Community Health Services, Inc.*, B-217,481, 85-1 CPD P 547 (1985) (GAO finding that even though award originally may have been based on invalid grounds, it will not disturb the award if proper grounds in fact exist for the decision).

IBS goes to great lengths to argue that it had an option to stand by its original terms, and that by not considering the initial proposal, NSF acted arbitrarily by in effect requiring IBS to submit a revised proposal.

The agency does not dispute that IBS had the opportunity to stand by its initial proposal. Furthermore, even if IBS was not required to commit to the new contract completion period (in order to be considered a valid proposal), the protester was still required to confirm its original offer. The protester never confirmed its initial proposal in which the agency could accept. It chose instead to file a Final Proposal Revision that revoked its initial offer. Therefore, NSF eliminated IBS's initial proposal because it had no offer from IBS that it may accept.

C. IBS's Final Proposal Revision Was Untimely Submitted.

Proposals, modifications, and final proposal revisions received after the time specified for receipt of such submissions – even if by only a few minutes -- are considered late. FAR § 15.208(b). Under these circumstances, the Contracting Officer will not consider any late

proposals unless (1) an electronic copy (if authorized) was received by the government by 5:00 p.m. one working day prior to the deadline for receipt of proposals; (2) the government's action was the paramount cause of the late receipt; or (3) the late submission was the only proposal the government received. FAR § 15.208(b)(1)(i)-(iii).

IBS does not dispute that the government received IBS's hand-delivered FPR after the 10:30 a.m. deadline. Further, IBS does not contend that the government caused the untimely receipt. Rather, IBS argues that electronic submissions may be accepted because "NSF points to nothing in the Solicitation which prohibits electronic submission." *IBS Protest*, p. 12.

The Contracting Officer properly rejected IBS's FPR submitted by e-mail because that method of transmission was not explicitly authorized. According to the FAR and GAO decisions, an acceptable method of transmitting (e.g., by regular mail, electronic commerce, or facsimile) proposals, modifications or Final Proposal Revisions to the government is one that is explicitly authorized by the procuring agency. FAR § 15.208(a); *Environmental Control Division*, Inc., B-255, 181, 94-1 CPD P115 (1994) (GAO ruled in favor of an agency's decision to reject protester's FPR submitted by facsimile where the solicitation did not explicitly authorize facsimile as a method of transmission). Moreover, the required authorization must be in writing and cannot be inferred by conduct or verbal assurances from government contracting officials. *G.D. Searle & Company*, B-247, 077, 92-1 CPD P 406 (1992) (absent explicit authorization in the solicitation or an amendment, a Contracting Officer's verbal assurance that a protester may transmit its offer by facsimile fails to constitute proper authorization).

IBS's assertion that e-mail transmission was authorized because it was not specifically prohibited by the solicitation is simply contrary to well-settled law. The protester failed to establish, nor is there any evidence in the record, that NSF authorized electronic transmission of proposals or modifications. Assuming that NSF had authorized e-mail transmission, IBS's FPR would still be considered late, as the agency did not receive protester's e-mail by 5 p.m. the day before the deadline as set forth under FAR §15.208(b)(1)(i).

Finally, even considering this issue under a set of facts most favorable to the protester – that NSF had authorized receipt of FPRs by e-mail for the 10:30 a.m. deadline (rather than 5:00 p.m. the day before), it would still be appropriate for the agency to reject IBS's partial submission. *See, Matter of Cyber Digital, Inc.*, B-270, 107, 96-1CPD P 20 (1996) (agency was not required to consider offeror's Best and Final Offer where only 8 of 19 pages were received on time). IBS's first e-mail, received by NSF at 10:30 a.m., contained only the technical portion of the FPR. AR Tab 7. A subsequent e-mail from IBS, received by NSF at 10:32 a.m., contained the cost proposal for IBS's final offer. AR Tab 8. Accordingly, even working under the hypothetical scenario most favorable to IBS, the protester's FPR was late as the cost proposal was submitted after the specified deadline.

## IV. CONCLUSION

For the foregoing reasons, the agency respectfully request that the GAO deny IBS's protest in full.

Respectfully submitted,

Bart Bridwell 5/28/03

Bart Bridwell
Contracting Officer
As to the Statement of the Facts

David T. Truong 5/28/03

David T. Truong
Assistant General Counsel
National Science Foundation

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the Administrative Report was sent in the following manner on March 28, 2003:

**BY HAND DELIVERY and**
**FACSIMILE (Legal Memorandum Only)**

Tania Calhoun
Acting Deputy Assistant General Counsel
Office of the General Counsel
U.S. General Accounting Office
441 G. Street, N.W. 1139
Washington, D.C. 20548
(202) 512-9749 (fax)

**BY OVERNIGHT MAIL and**
**FACSIMILE (Legal Memorandum Only)**

Keith Calhoun-Senghor, Esq.
Counselor at Law
1429 Madison St., N.W.
Washington, D.C. 20011
(202) 425-4968
(202)291-4891 (fax)