# Response of Integrated Business Solutions, Inc. to

# National Science Foundation Administrative Report

# and Memorandum of Law

# in

# Protest No. B292239

# (Solicitation No. CPO-0200006, Facilities Management Services)

## TABLE OF CONTENTS

I. CASE OVERVIEW

II. NSF NOW CONCEDES THAT UNDER LONG-STANDING GAO AND CONTRACT LAW PRECEDENT, AN OFFEROR MUST CLEARLY INTEND TO REVOKE ITS EXISTING OFFER BEFORE THAT OFFER CAN BE DEEMED TO BE REVOKED.

NSF Has Not Produced A Single Case, Nor Cited A Single Legal Precedent, To Refute The Governing Legal Standard In This Case, Namely: Absent A Clear Expression Of Intent By IBS To Revoke Its Original Proposal, IBS's Original Proposal Remains Properly Before NSF And Must Be Considered By NSF In Making This Award.

III. THE FACTS SET OUT IN NSF'S OWN RESPONSE CONFIRM THAT IBS CONSISTENTLY EXPRESSED ITS INTENT TO HAVE ITS ORIGINAL OFFER CONSIDERED FOR AWARD IF ITS BAFO WERE RULED UNTIMELY BY NSF.

A. Even If NSF Officials Cannot Recall IBS's Verbal Request To Have Its Original Proposal Considered, The Language of NSF's March 20 Letter Corroborates Such A Previous Request And IBS Immediately Renewed This Request Within 24 Hours After NSF Notified IBS In Its March 20 Letter That Its Request For An Extension Had Been Denied, And Did So Again By Letter the Same Day.

1. The Specific Language of NSF's March 20 Letter Strongly Suggests That NSF Was, Indeed, Responding To A Previous Request By IBS To Have Its Original Proposal Considered For Award.

2. IBS Immediately Confirmed Its Earlier Expression Of Intent To Have Its Original Proposal Considered Within 24 Hours Of Receiving Notice From NSF That Its Extension Request Was Denied.

3. IBS Confirmed For A Third Time, By Letter, That It Intended To Have Its Original Proposal Considered Within 24 Hours After IBS Was Notified That Its Request For An Extension Was Denied.

IV. ALL OTHER ISSUES RAISED IN NSF'S RESPONSE EITHER DO NOTHING TO REFUTE IBS's CONSISTENTLY DEMONSTRATED INTENT TO HAVE ITS ORIGINAL OFFER CONSIDERED FOR AWARD, OR HAVE BEEN PREVIOUSLY ADDRESSED IN IBS's ORIGINAL BID PROTEST.

A. NSF's Elimination of IBS's Initial Proposal From Further Consideration Was Arbitrary, Unfair, And Contrary to The Terms Of NSF's Own Solicitation.

1. The Facts And Case Law Demonstrate That The Mere Submission Of IBS's BAFO Did Not Revoke Its Initial Offer.

2. IBS Repeatedly Confirmed Its Initial Offer To NSF Not Once, But Three Times.

3. IBS's Initial Proposal Is An "Otherwise Successful Offer" Because There Was Never Any New "Requirement" Created By Amendment #6 That Needed To Be Addressed.

**Keith Calhoun-Senghor, Esq.**
**Counselor at Law**
1429 Madison St., N.W.
Washington, D.C. 20011
Tel: 202/425-4968
Fax: 202/291-4891

**VIA FACSIMILE (202) 512-9749**
**AND OVERNIGHT MAIL**

June 7, 2003

Tania Calhoun, Esq.
Acting Deputy Assistant General Counsel
Office of the General Counsel
U.S. General Accounting Office
441 G Street, N.W., Room 1139
Washington, DC 20548
ATTN: Procurement Law Control Group

Subject: Response of Integrated Business Solutions, Inc. ("IBS") to NSF's Administrative Report and Memorandum of Law in Protest No. B-292239 (Solicitation No. CPO-0200006, "Facilities Management Services")

Dear Ms. Calhoun:

I. CASE OVERVIEW

Integrated Business Solutions, Inc. ("IBS") respectfully responds to the National Science Foundation's ("NSF") Administrative Report and memorandum of law in Protest No. B-292239 ("NSF Response") to note two facts:

1. NSF has not produced a single case, nor cited a single legal precedent, to refute the governing legal standard in this case, namely: absent a clear expression of intent by IBS to revoke its original proposal, IBS's original proposal remains properly before NSF and must be considered by NSF in making this award; and

2. NSF concedes that IBS expressed its intent to have its original proposal considered if its BAFO were ruled untimely. NSF only claims that the two NSF officials present when this intent was first expressed at BAFO submission cannot now remember it being expressed.

However, memory failures aside, NSF's own account of the facts shows that IBS repeatedly and consistently expressed its intent to have its original proposal considered for award. First, the language of NSF's March 20, 2003 letter denying IBS's extension

request and finding IBS's original proposal no longer eligible for further consideration strongly suggests that NSF was responding to a previous expression of intent by IBS to have its original proposal considered. Second, IBS repeated its intent within 24 hours after receiving notice that its request for an extension of time had been denied. Third, IBS repeated its intent a third time the same day in writing.

Therefore, because IBS's original proposal remains validly before NSF, IBS respectfully requests that NSF be required to consider either IBS's original offer, or its revised offer, in making this award.

II. <u>NSF NOW CONCEDES THAT UNDER LONG-STANDING GAO AND CONTRACT LAW PRECEDENT, AN OFFEROR MUST CLEARLY INTEND TO REVOKE ITS EXISTING OFFER BEFORE THAT OFFER CAN BE DEEMED TO BE REVOKED.</u>

<u>NSF Has Not Produced A Single Case, Nor Cited A Single Legal Precedent, To Refute The Governing Legal Standard In This Case, Namely: Absent A Clear Expression Of Intent By IBS To Revoke Its Original Proposal, IBS's Original Proposal Remains Properly Before NSF And Must Be Considered By NSF In Making This Award.</u>

NSF now concedes that there is no legal basis for ignoring IBS's explicit intent in determining whether its original proposal was revoked. NSF admits that:

> The central issue here is not what type of offer protester labels its FPR. <u>It is a question of the protester's intent</u>—as can be surmised by the undisputed record.

NSF Response at p. 5. (Emphasis added). Although there are several factual disputes, there is more than sufficient agreement on the record to conclude that IBS consistently intended to have its original proposal considered for award if its BAFO were ruled untimely.

For example, both parties agree that in <u>Department of the Army—Reconsideration</u>, B-251527.3, September 17, 1993, 93-2 CPD ¶ 178, the GAO confirmed the critical role an offeror's expression of intent plays in determining whether an offeror's original proposal remains under consideration. However, that is where agreement regarding this case ends.

GAO's principal rationale in that case was that, "[s]ince [offeror's] BAFO was late, <u>and its initial offer had already expired</u>, we concluded that there was in effect no offer from [offeror] which the agency could accept." (Emphasis added). <u>Department of the Army—Reconsideration, supra</u>. That is simply not the case here.

Unlike <u>Department of the Army--Reconsideration</u>, IBS's original proposal has not expired; it was never withdrawn; it was never revoked. IBS's original proposal remains validly before NSF and must be considered for award.

Moreover, Department of the Army—Reconsideration implicitly recognizes the power of an agency to evaluate original offers, even after a late BAFO submission, assuming the original offer was not explicitly revoked, and it is in the best interests of the government to do so.

Finally, in Department of the Army—Reconsideration, the government required written confirmation of original proposals in order for offerors to have their original proposals considered. Id. ("[T]he agency also stated that any offeror who did not wish to change its initial proposal should submit a letter so stating."). In contrast to this explicit language, NSF never specified the time or manner of confirmation. See NSF March 10 Letter.

Similarly, both parties agree, that in Touchstone Textiles, Inc., B-272230.4, September 5, 1996, 92-2 CPD ¶ 107, the GAO confirmed the principle that an offeror's intent is key in determining whether there is a revocation of an existing offer. However, beyond this broad principle, there is little factual similarity to the present case.

In Touchstone Textiles, the offeror submitted an initial proposal, but failed to submit a timely BAFO. The offeror said nothing until after the contract was awarded, then argued that its initial proposal price was lower than the winning bid and should have been considered for award.

The GAO noted:

> As a general rule, once offerors submit BAFOs, award must be based upon the BAFOs and not upon prior versions of the proposals. [Citing Restatement (Second) Contracts § 42 (1981); FAR § 15.611(d), and Department of the Army--Reconsideration]. Since an offeror's submission of a BAFO typically demonstrates an intent by that offeror to modify and/or replace an earlier offer, the submission of a BAFO generally operates to extinguish the agency's right to accept the earlier offer. [Citing Department of the Army—Reconsideration].

Id. (Emphasis added).

These conditional and qualifying phrases are significant because they imply that there are exceptions to this rule. NSF would misuse Touchstone Textiles to argue that submission of a BAFO, by itself, is sufficient to demonstrate that an initial offer is revoked. See NSF Response at p. 5 ("It is undisputed that IBS submitted a revised proposal. This fact alone is enough to demonstrate IBS's intent to revoke its prior offer." [Citing Touchstone Textiles]). However, that is not the principle for which Touchstone Textiles stands.

In Touchstone Textiles the GAO ruled that the agency properly eliminated the offeror's initial offer from further consideration noting: "We do not think the agency was free to ignore the intent conveyed by the submission of a modified offer." Id. The GAO noted that the BAFO set forth substantially different, and higher, prices than its initial offer.

Therefore, "although [the BAFO was untimely and could not be considered a viable offer, it nonetheless demonstrated an intent by the protester to modify and replace its initial offer terms." Id.

Significantly, in Touchstone Textiles, offerors were not allowed to stand by their original proposals because the agency issued an amendment requiring the use of a more expensive material. Therefore, the agency expected offerors' prices to increase. This may have been why the protester's initial offer was lower than the actual winning bid. It could also explain why the GAO was not inclined to reward a protester who expressed no interest in having its initial proposal considered until after the contract was awarded and bids were opened.

Thus, the GAO concluded that, "we do not think the agency was free to ignore the intent conveyed by the submission of a modified offer." The lack of any expression of intent in the intervening period between submission of the BAFO and contract award reasonably "demonstrated an intent by the protester to modify and replace its initial offer terms." Id.

Therefore, despite NSF's misreading of the factual relevance of Department of the Army—Reconsideration and Touchstone Textiles, it concedes the broader legal standard: a clear expression of intent by IBS is required in order to revoke its valid, existing offer now properly before NSF.

NSF seeks to manufacture intent from the mere fact that IBS attempted to submit a timely BAFO. To arrive at this conclusion, NSF ignores IBS's repeated and explicit statements of contrary intent. NSF also ignores contrary GAO precedent that is factually more relevant and very likely controlling in this case.

For example, in PBM Construction, Inc., B-271344, May 8, 1996, 96-1 CPD ¶ 216, bidders were required to offer a 75-day acceptance period to the government, and facsimile bids were not allowed. The winning bidder submitted an initial proposal, and three days later tried to modify its bid to increase the price via fax. The protester challenged the validity of the faxed modification, but the contracting officer denied the protest and awarded the contract at the higher modified price. The protester protested to the GAO, which noted that the faxed modification was invalid, but that the initial proposal was still a valid proposal capable of being accepted by the government.

Because the 75-day acceptance period had not expired, GAO found that the offeror's invalid attempt to modify its original bid did not affect the validity of the original proposal that was still properly before the agency and capable of being accepted.

> In contrast, here, while the facsimile modification was unacceptable, by its own terms, the original bid remained available for acceptance for 75 days. Bids on formally advertised or sealed bid procurements are required to be firm and are not subject to withdrawal, unless there is a bona fide mistake in bid. [Citation omitted]. In this case, upon being advised that its modification was invalid, the

> awardee did not assert that the modification reflected the correction of any mistake; rather, it simply agreed to perform at its initial price. Absent any evidence that a mistake had been made, [the winning bidder] was bound by its initial bid, which the agency could not properly reject....In these circumstances, we fail to see how acceptance of [the winning bidder's] bid could be considered detrimental to the integrity of the competitive bidding system, and the agency's contract modification to reflect such an acceptance is unobjectionable.

Id. (Emphasis added). See also Robotic Systems Technology, B-271760, May 14, 1996, 96-1 CPD ¶ 229 ("After receipt of Robotic's [late] offer, the contracting officer directed that all BAFOs, including Robotic's [late] offer, be evaluated to determine 'whether it was clearly in the government's best interests to reopen discussions and allow [Robotic] to submit a timely BAFO.'"); FAR 15.208(b) (outlining terms under which a late proposal may be accepted by the government).

Therefore, at the end of the day, NSF has not produced a single case, nor cited a single legal precedent, to refute the governing legal standard in this case, namely: absent a clear expression of intent by IBS to revoke its original proposal, its original proposal is still properly before NSF and must be considered in making this contract award.

## III. THE FACTS SET OUT IN NSF'S OWN RESPONSE CONFIRM THAT IBS CONSISTENTLY EXPRESSED ITS INTENT TO HAVE ITS ORIGINAL OFFER CONSIDERED FOR AWARD IF ITS BAFO WERE RULED UNTIMELY BY NSF.

### A. Even If NSF Officials Cannot Recall IBS's Verbal Request To Have Its Original Proposal Considered, The Language of NSF's March 20 Letter Corroborates Such a Previous Request and IBS Immediately Renewed This Request Within 24 Hours After NSF Notified IBS In Its March 20 Letter That Its Request For An Extension Had Been Denied, And Did So Again By Letter the Same Day.

NSF's factual account concedes that IBS expressed its intent to have its original proposal considered if its BAFO were ruled untimely. NSF only claims that the two NSF officials present cannot now remember this intent being expressed at the time of BAFO submission.

Memory failures aside, three separate facts set out in NSF's own Response confirm that IBS consistently expressed its intent to have its original offer considered for award if its BAFO were ruled untimely:

1. The specific language of NSF's March 20 Letter strongly suggests that NSF was, indeed, responding to a previous request by IBS to have its original proposal considered for award;

2. IBS immediately confirmed its earlier intent within 24 hours after it was notified by NSF that its extension request was denied; and

3. IBS repeated its intent by letter within 24 hours after it was notified by NSF that its extension request was denied.

Each of these undisputed facts corroborates IBS's contention that it never intended to revoke its original offer, but instead always intended to have its original proposal considered for award if its BAFO were ruled untimely.

1. <u>The Specific Language of NSF's March 20 Letter Strongly Suggests That NSF Was, Indeed, Responding To A Previous Request By IBS To Have Its Original Proposal Considered For Award.</u>

In its March 20 Letter, NSF ruled for the first time on IBS's request for an extension of time.[1] IBS Bid Protest, Attachment 2 (NSF March 20 Letter). In that letter, NSF takes pains to address explicitly the question of whether IBS's original proposal can be considered in place of its untimely BAFO. NSF devotes an entire paragraph to just this discussion and begins with the words: "NSF also considered whether the original proposal submitted by IBS could still be considered."

Although NSF's explanation of its decision is inconsistent and flawed, the fact that NSF went to such effort to provide a detailed rationale for refusing further consideration of IBS's original proposal corroborates IBS's consistent claim that it requested consideration of its original proposal at the time of its BAFO submission.

2. <u>IBS Immediately Confirmed Its Earlier Expression Of Intent To Have Its Original Proposal Considered Within 24 Hours Of Receiving Notice From NSF That Its Extension Request Was Denied</u>.

Within 24 hours of receiving notice that its extension request was denied, IBS, through its duly designated representative, contacted NSF by telephone and repeated IBS's intent to have its original proposal considered for award. This fact is undisputed and described in NSF's own Response. NSF Response at p. 3.

Therefore, NSF knew within 24 hours of its decision that IBS still intended to have its

---

[1] NSF's March 20 Letter makes no reference to any prior decision regarding IBS's request for an extension of time. Indeed, contrary to the suggestion contained in Ms. Spencer's affidavit, NSF Response, Tab 5 (Spencer Affidavit at p. 1), NSF's Response concedes that its March 20 Letter was the first time it ruled on IBS's request for an extension. NSF Response at p. 7 ("It is undisputed that NSF did not reject IBS's [BAFO] for lateness until March 20."). Moreover, Dr. Kellizy categorically denies that any decision regarding the extension was ever conveyed to him, telephonically or otherwise, prior to NSF's March 20 Letter. Attachment 1, June 1, 2003, Affidavit of Dr. Abe Kellizy.

original proposal considered for award.

3. IBS Confirmed For A Third Time, By Letter, That It Intended To Have Its Original Proposal Considered Within 24 Hours After IBS Was Notified That Its Request For An Extension Was Denied.

This second expression of intent was followed that same day by a letter from IBS confirming its previous statements. That letter reads in relevant part:

> This letter is in response to your telephone conversation this morning with Mr. Aubrey Stephenson, who called you on my behalf and with my consent, regarding questions and concerns I had pertaining to your letter dated March 20, 2003. During your conversation, you asked Mr. Stephenson to convey these questions in writing. This letter is in response to your request.
>
> Specifically I asked Mr. Stephenson to seek clarification on two points:
>
> 1. The legal basis for stating that our initial, timely cost proposal is "ineligible for further consideration."
>
> As you know, your letter requesting final proposal revisions, dated March 10, 2003, explicitly provides for NSF's consideration of original offers if no revisions are submitted. We have not withdrawn our initial proposal, nor have we notified NSF that our initial proposal should no longer be considered. Indeed, at our request, our subcontractor [FMS] explicitly confirmed to NSF that our initial proposal should be considered if our revised electronic and paper submissions were not considered.

IBS Bid Protest, Attachment 3 (March 21, 2003 Letter from IBS to NSF).

Therefore, IBS clearly expressed its intent to have its original proposal considered for award not once, or even twice, but three times in seven days: once at BAFO submission, before NSF decided on IBS's request for an extension, once within 24 hours of receiving NSF's decision denying that extension, and a third time by letter that same day.

It is difficult to imagine how IBS could be clearer in expressing its consistent intent not to revoke its original proposal, and to have that proposal considered for contract award.

IV. ALL OTHER ISSUES RAISED IN NSF'S RESPONSE EITHER DO NOTHING TO REFUTE IBS's CONSISTENTLY DEMONSTRATED INTENT TO HAVE ITS ORIGINAL OFFER CONSIDERED FOR AWARD, OR HAVE BEEN PREVIOUSLY ADDRESSED IN IBS's ORIGINAL BID PROTEST.

All other issues raised by NSF either do nothing to refute IBS's clearly demonstrated intent to have its original proposal considered for award, or have been previously

addressed in IBS's original bid protest. Nevertheless, several issues raised in the NSF Response will be addressed.

A. <u>NSF's Elimination of IBS's Initial Proposal From Further Consideration Was Arbitrary, Unfair, And Contrary to The Terms Of NSF's Own Solicitation</u>.

1. <u>The Facts And Case Law Clearly Demonstrate That The Mere Submission Of IBS's BAFO Did Not Revoke Its Initial Offer</u>.

NSF's contention that IBS's BAFO submission alone served to revoke its initial offer has been discussed earlier and will not be repeated here.

However, NSF also argues that IBS's clear expression of intent is somehow "unresponsive" to the Solicitation's instructions. NSF Response at pp. 5-6. NSF points to no provision in the Solicitation prohibiting IBS's method of confirmation. It would be hard pressed to do so since the one-sentence instruction in NSF's March 10 Letter provides no detail as to when, or how, confirmations are to be given.

What is clear is that NSF explicitly allowed offerors to have their original proposals considered for award. <u>See</u> NSF March 10 Letter. What is also clear is that IBS requested an extension of time that was within NSF's discretion to grant. While NSF considered this request, it was both legally permissible and responsive to the Solicitation for IBS to confirm that it wished to have its original proposal considered if NSF denied the extension. NSF cannot now label IBS "unresponsive" for simply following a logical course of action based on the vague direction contained in the Solicitation.[2]

---

[2] NSF argues that forcing it to consider IBS's original proposal for award in this case would lead to the absurd result that offerors would be able to submit their original proposals in the event the government did not favorably score their BAFOs. NSF Response at p. 5, n. 2.

This argument is flawed at two levels.

First, in this case, NSF could have explicitly required that all original proposals be confirmed in writing by the BAFO deadline. <u>See Robotic Systems Technology</u>, B-271760, May 14, 1996, 96-1 CPD ¶ 229. It did not. NSF also could have stated that only BAFOs would be considered for award. <u>See Environmental Control Division, Inc</u>., B-255181, February 16, 1994, 94-1 CPD ¶ 115. NSF chose not to do this, either. Instead, NSF consciously allowed original proposals to be considered for award, without specifying when, or how, confirmations must to be made.

Given NSF's decisions, it cannot be heard now to complain that following its own rules in this solicitation will lead to absurd results in other solicitations.

Second, NSF's admittedly absurd example is factually different from the present case. In NSF's hypothetical, the government actually accepts the offeror's BAFO. Had NSF, in its discretion, granted IBS's extension, or otherwise accepted its BAFO, IBS's original offer would not be an issue in this case.

NSF also argues that IBS's repeated and explicit expressions of intent should be ignored because some were expressed by designated representatives of IBS, and not IBS employees. NSF Response at p. 6 ("Secondly, assuming that Dr. Kellizy stated that IBS was proceeding with its initial proposal, he was not authorized to make such a determination—as he was an employee of an proposed subcontractor."). Such an argument lacks foundation in both law and reality. IBS clearly is entitled to designate whom it wishes to speak or act on its behalf.

Moreover, the record shows that NSF was on notice that IBS authorized these particular representatives to request that its original proposal be considered. IBS Bid Protest, Attachment 3 (March 21, 2003 letter from IBS to NSF; "This letter is in response to your telephone conversation this morning with [FMS], who called you on my behalf and with my consent, regarding questions and concerns I had pertaining to your letter dated March 20, 2003." And later in the same letter: "Indeed, at our request, our subcontractor [FMS], explicitly confirmed to NSF that our initial proposal should be considered if our revised electronic and paper submissions were not considered.").

NSF also mischaracterizes a clear non-party to this action as a purported "interested party." NSF Response at p. 6 ("A subcontractor is not an 'interested party' to a procurement unless the subcontract is 'by or for the government.'"). This is also a curious statement since no subcontractor has ever claimed to be an "interested party" in this action.

2. <u>IBS Clearly And Repeatedly Confirmed Its Initial Offer To NSF Not Once, But Three Times</u>.

NSF argues that IBS never confirmed its initial offer, leaving NSF with no offer that it could accept. NSF Response at p. 7. This contention requires several leaps of logic to arrive at this conclusion.

First, one must ignore IBS's explicit and repeated expressions of contrary intent made at the time of its BAFO submission, within 24 hours after IBS received notice of NSF's decision, and that same day by letter. Moreover, the language of NSF's own March 20 letter strongly suggests that an earlier request was, indeed, made by IBS at the time of its BAFO submission.

Second, one must give greater weight to the <u>implied</u> intent of IBS's BAFO submission, than to the <u>express</u> intent of IBS's often-repeated statements.

Third, one must badly misread the factual similarities between <u>Department of Army—Reconsideration</u>, <u>Touchstone Textiles, Inc.</u>, and this case.

Finally, one must turn a blind eye to contrary precedent, including <u>PBM Construction, Inc.</u>

While such legal gymnastics are possible, they are unsupported by the facts of this case or GAO precedent.

NSF also argues that its March 10 Letter requiring confirmation of original proposals provides no reasonable basis to believe that different deadlines applied to BAFO submissions and original proposal confirmations.

However, a close examination of the language of the March 10 letter reveals that, while the letter is clear and specific as to the numerous requirements for BAFO submissions, it sets forth not a single requirement relating to confirmations of original proposals.

For example, the first paragraph of the NSF March 10 Letter advises IBS that it has been invited to submit its best terms from a technical and cost/price standpoint.

The second paragraph describes in detail how a BAFO must be submitted. That paragraph requires the submission of an original and six copies of Volume I, the Pricing Proposal. It requires submission of an original and six copies of Volume II, the Technical Proposal. It requires that copies must be submitted to Ms. Kristin Spencer, in the NSF Division of Contracts Policy and Oversight. It lists the address, room number, city, state, and zip code where the BAFO must be delivered. It lists the time and date when all seven copies of the BAFO must arrive at NSF. It advises offerors to review Section A2 of the Solicitation for important delivery and deadline information. It is worth noting that Section A2 only applies to proposals. Finally, it advises offerors that any modification of a former offer received after the date and time specified will be handled in accordance with FAR 52.215-1, which also is inapplicable to confirmations.

Therefore, the second paragraph of NSF's March 10 Letter goes into great detail about many aspects of the BAFO submission, but gives no indication that any of these requirements apply to confirmations of original proposals. Indeed, it would be curious to apply many, if any, of these requirements--an original and six copies, for example--to a confirmation of an original proposal.

The third paragraph of the letter goes into still greater detail about BAFOs. It states that an authorized official must sign the BAFO. It requires that revised or added pages be a different color than the initial proposal. It requires that revised text be a different color than the initial proposal, and requires that changed text be identified by bars and/or other notations in the page borders.

Again, the third paragraph of the NSF March 10 Letter goes into great detail about the requirements of the BAFO, and sets forth requirements--different color pages, and text, for example--that no one would reasonably assume applied to the confirmation of an original proposal.

The fourth and final paragraph states that any changes to the proposal must be identified within the text of the BAFO. It states, in one sentence, and without further explanation,

that if no revisions are made to the original proposal, "confirm that the offer remains unchanged." Finally, it states that additional questions are attached for IBS's consideration as it prepares its BAFO.

That is the entire letter.

NSF does not specify by which date confirmations must to be given. NSF does not specify how confirmations must be given. Yet, NSF now argues that offerors should have somehow deduced that one of the many BAFO requirements listed above, actually applied to confirmations. In the absence of clear instructions, there is no logical reason to believe that detailed BAFO requirements should selectively pertain to confirmations.

Given the detail that NSF is obviously capable of writing, an equally reasonable approach would be to assume that NSF never intended to set forth a specific time or manner for proposal confirmations because NSF already had all initial proposals in its possession, had evaluated them and, therefore, time was not a critical factor in learning which ones were confirmed. Had NSF intended to include a deadline, the cases show that the government knows how to write such a requirement. See Robotic Systems Technology, B-271760, May 14, 1996, 96-1 CPD ¶ 229 (where a specific deadline was set for confirmation of existing offers; "[W]e disagree with Robotic that the RFP did not state a date by which an offeror's confirmation of its offer must be submitted under the agency's request for BAFOs. [O]fferors were informed that negotiations would close and BAFOs were due February 29, 1996, and that 'offerors who do not intend to modify their original offer, but who do want to be considered for award, must confirm their offers by responding to this request for [BAFOs] to remain in consideration for award."); Environmental Control Division, Inc., B-255181, February 16, 1994, 94-1 CPD ¶ 115 (offerors required to confirm acceptance of a new requirement by BAFO deadline);

NSF should not be allowed to create a new post hoc confirmation deadline requirement that did not exist in the Solicitation.

3. IBS's Initial Proposal Is Clearly An "Otherwise Successful Offer," Because There Was Never A New "Requirement" Created By Amendment #6 That Needed To Be Addressed.

NSF argues that IBS's proposal does not qualify as an "otherwise successful offer" because it does not address a new "requirement" that was created by Amendment #6 after original proposals were submitted. NSF Response at pp. 7-8.

Two points are worth noting:

1. NSF cites Environmental Control Division, Inc., B-255181, February 16, 1994, 94-1 CPD ¶ 115, in support of its position that IBS's failure to address NSF's alleged new "requirement" disqualifies IBS as an "otherwise successful proposal." NSF Response at p. 7-8.

However, the factual circumstances in Environmental Control Division, Inc. were significantly different than this case. There, the government added a critical new requirement on which the success of the entire contract hinged. The government also required offerors to commit to this new requirement in writing before being considered for award. In this case, however, NSF's amendments were so minor, that NSF did not require offerors even to address them in order to be considered for award. NSF allowed offerors to simply confirm their original offers.

2. Contrary to NSF's assertion, offerors were not required to commit to any new time period described by Amendment #6. NSF quotes no language from Amendment #6, or anywhere else in the Solicitation, to support its claim. That is because no such requirement exists.

There is no dispute that IBS committed to the entire 84-month (7 year)[3] period of contract performance. This consists of a core performance period of three years, and up to four, 12 month award term increments, for up to an additional 48 months. These additional 48 months are awarded based on overall contractor performance as evaluated by the Government. There is also no dispute that the start date of the contract shifted forward approximately five months because of delays.

Therefore, without citing any language in the Solicitation, NSF now argues that IBS should be disqualified because it failed to "commit" to the last 4.5 months of an optional 12-month term that is awardable at the government's discretion.

NSF concedes, on the one hand, that original proposals may be considered for award, NSF Response at p. 8, yet on the other hand, argues that IBS is "required" to commit to an optional 4.5 month period described in Amendment #6, when no such requirement appears in Amendment #6 or anywhere else in the Solicitation. See NSF Response at pp. 7-8.

The conclusion is inescapable that NSF is effectively requiring all offerors to submit BAFOs, thus, penalizing IBS for taking NSF at its word. Such an after-the-fact change of the rules is arbitrary, unfair, and contrary to the express terms of NSF's own Solicitation. See Logitek, Inc., B-238773, July 6, 1990, 90-2 CPD ¶ 16 (where solicitation conditions were unfairly relaxed for one offeror after award, without giving an opportunity for others to respond; "Award must be based on the requirements stated in the solicitation.")

All other issues raised by NSF are adequately discussed in IBS's initial bid protest.

Therefore, there is no reason for NSF to refuse to consider IBS's valid, existing proposal, or its timely electronic revised proposal, in determining the best value to the Government.

---

3 Counsel mistakenly referred to this as a five-year commitment in IBS's original bid protest. IBS Bid Protest at p. 4. IBS's original proposal actually commits for the entire seven-year period.

IBS respectfully requests that its original or revised proposal be considered for award of this contract. IBS further requests that any contract award be delayed pending the final determination of this protest, and that NSF be assessed costs and attorneys fees.

Sincerely,



Keith Calhoun-Senghor, Esq.
for Integrated Business Solutions, Inc.

cc: Mr. Bart Bridwell, Contracting Officer, NSF
Mr. Carlton Joseph
Mr. Aubrey Stephenson

Attachments

# ATTACHMENT 1

# AFFIDAVIT
# OF
# DR. ABE KELLIZY

I, Dr. Abe Kellizy, am over the age of 18 and competent to testify to the matters contained herein:

1. On March 13, 2003, I was the duly designated representative of IBS in relation to its bid submission to the National Science Foundation (NSF) for Solicitation No. CPO-0200006 (Facilities Management Services).

2. On March 13, 2003, I telephoned NSF to request an extension of time in which to submit IBS's Best and Final Offer (BAFO) in the above Solicitation.

3. Upon telephoning NSF, I spoke with Ms. Kristin Spencer, a representative of the NSF contracting office.

4. I requested an extension of time and Ms. Spencer indicated that she would need to speak to the contracting officer before she could respond to my request. She indicated that he was away in a meeting at the time and she did not know if she could locate him. She then said that any such request must be in writing. I indicated that I would submit my request in writing.

5. Our conversation was very brief. At no time did Ms. Spencer indicate to me that IBS's request for an extension had been denied.

6. I then hung up and sent her a written request for an extension of time as she had requested.

7. I first learned that NSF denied IBS's request for an extension of time on March 20, 2003, after reading a copy of NSF's letter to that effect.

I affirm under the penalty of perjury that the contents of the foregoing statement are true and correct.

Dr. Abe Kellizy

June 1, 2003

CERTIFICATION

I certify that on June 7, 2003, a copy of this document was sent via facsimile and overnight mail to:

Tania Calhoun, Esq.
Acting Deputy Assistant General Counsel
Office of the General Counsel
U.S. General Accounting Office
441 G Street, N.W., Room 1139
Washington, D.C. 20548
ATTN: Procurement Law Control Group
(202) 512-9749 (fax)

and

Mr. Bart Bridwell
Contracting Officer
National Science Foundation
Division of Contracts, Policy & Oversight
4201 Wilson Boulevard, Room 475
Arlington, Virginia 22230
(703) 292-9041 (fax)

Keith Calhoun-Senghor, Esq.
for
Integrated Business Solutions, Inc.