GAO
Accountability * Integrity * Reliability

United States General Accounting Office
Washington, DC 20548

# Facsimile Transmission Sheet

**Date:** 7-9-03 Number of pages, including this cover sheet: 6

**Re:** Bid Protest of Integrated Business Solutions, Inc.

**From:** Matthew Crosby

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Keith Calhoun-Senghor, Esq. | | 202 425-4968 | 202-291-4891 |
| David T. Truong, Esq. | NSF | 703-292-8060 | 703-292-9041 |

GAO
Accountability * Integrity * Reliability

Comptroller General
of the United States

United States General Accounting Office
Washington, DC 20548

# Decision

**Matter of:** Integrated Business Solutions, Inc.

**File:** B-292239

**Date:** July 9, 2003

Keith Calhoun-Senghor, Esq., for the protester.
David T. Truong, Esq., National Science Foundation, for the agency.
Matthew T. Crosby and Christine S. Melody, Esq., Office of the General Counsel, GAO, participated in the preparation of the decision.

**DIGEST**

1. Agency properly rejected protester's electronically submitted final proposal revision for facilities management services where solicitation did not authorize the electronic submission of proposals.

2. Agency properly rejected protester's initial proposal as unacceptable where protester failed to acknowledge solicitation amendment changing period of performance.

**DECISION**

Integrated Business Solutions, Inc. (IBS) protests the rejection of its proposal under solicitation No. CPO-0200006, issued by the National Science Foundation (NSF) for facilities management services. IBS contends that the agency improperly rejected its final proposal revision (FPR) as late. Additionally, IBS contends that, after rejecting the FPR, the agency improperly failed to consider IBS's initial proposal.

We deny the protest.

IBS's initial proposal was one of four that NSF included in the competitive range. NSF conducted discussions with the four competitive range offerors; discussions with IBS took place on March 4, 2003. On March 10, the agency issued a letter informing the four offerors that their final technical and cost/price submissions were due at 10:30 a.m. on March 13. Attached to the letter was a list of questions that each offeror might consider during preparation of its FPR. Also attached was an amendment that delayed the period of performance by 4-1/2 months. The letter instructed offerors that they could submit an FPR or confirm their initial proposal.

At 10:26 a.m. on March 13, NSF received an e-mail from an employee of Federal Management Systems, Inc. (FMS), a proposed subcontractor to IBS. The e-mail informed NSF that IBS's FPR was en route, and requested a 1-hour extension to the time set for receipt of FPRs. At 10:30 a.m., NSF received an e-mail from IBS containing the technical proposal portion of the FPR. At 10:32 a.m., NSF received another e-mail with the cost portion of the FPR. At 11:11 a.m., NSF received a hand-delivered FPR from IBS. According to the agency, the contracting officer received the FPR, but advised the deliverer that the submission was late. IBS asserts that the deliverer then informed the contracting officer that IBS had applied for an extension to the FPR deadline. Further, according to IBS, the deliverer orally confirmed IBS's initial proposal and instructed NSF to consider IBS's initial proposal in the event that NSF denied the extension. NSF disputes IBS's account of these events.

By letter dated March 20, NSF informed IBS that it had rejected IBS's FPR as late, and that NSF would not consider IBS's initial proposal. On March 28 IBS filed an agency-level protest with NSF. IBS argued that NSF improperly refused to consider IBS's initial proposal, and that IBS's FPR was timely because the RFP did not prohibit electronic submissions. On April 17, NSF denied IBS's protest. On April 28, IBS filed this protest with our Office.

Rejection of IBS's FPR

IBS first protests NSF's rejection of its electronically submitted FPR, arguing that the RFP did not prohibit submission of offers by e-mail or other electronic methods.

As a general matter, offerors may use any transmission method authorized by the solicitation. Federal Acquisition Regulation (FAR) § 15.208(a). Here, the RFP incorporated by reference FAR § 52.215-1, which provides in pertinent part as follows: "Unless other methods (e.g., electronic commerce or facsimile) are permitted in the solicitation, proposals and modifications to proposals shall be submitted in paper media . . . ." FAR § 52.215-1(c)(1). The solicitation nowhere authorized the use of electronic methods of submission, and in fact clearly contemplated submission in paper form. See RFP § A2 (listing the mailing address for offers and instructions for hand delivery). Accordingly, since the RFP did not authorize submission of offers by e-mail or other electronic methods, NSF properly rejected IBS's electronically submitted FPR. See Environmental Control Div., Inc., B-255181, Feb. 16, 1994, 94-1 CPD ¶ 115 at 4 (facsimile best and final offer (BAFO) was properly rejected where RFP did not provide authorization for facsimile submissions); G.D. Searle & Co., B-247077, Apr. 30, 1992, 92-1 CPD ¶ 406 at 3.

In any event, even if the RFP had authorized electronic submission of offers, the record shows that at the submission deadline--10:30 a.m., March 13--NSF's server had received only the technical portion of IBS's proposal. Two minutes after the

deadline, NSF's server received the remaining cost portion.[1] Proposals received after the exact time specified for receipt of proposals are late and will not be considered by the government unless the exceptions outlined in FAR § 15.208(b)(1) apply. PMTech, Inc., B-291082, Oct. 11, 2002, 2002 CPD ¶ 172 at 2. Nothing in the record suggests that those exceptions apply here.[2] Thus, NSF was under no obligation to consider the submission it received at 10:30 a.m. because that submission was missing a material portion. Cyber Digital, Inc., B-270107, Jan. 24, 1996, 96-1 CPD ¶ 20 at 4.

IBS also maintains that its FPR may be considered under FAR § 15.208(b)(2), which provides that the government may accept late modifications to otherwise successful proposals when the terms are made more favorable to the government. IBS views its untimely FPR as a modification to its "otherwise successful" initial proposal. We disagree. The term "otherwise successful" means the government may accept a late modification from an offeror who is already in line for award. Environmental Control Div., Inc., supra, at 5. Here, IBS was not in line for award since, as discussed below, IBS's initial proposal was not acceptable.

IBS's Initial Proposal

As an alternate ground of protest, IBS disputes NSF's rejection of its initial proposal. IBS contends that, despite its submission of an FPR, its initial proposal remains viable and must be considered by NSF. We disagree.

As noted above, along with its March 10 letter requesting FPRs, NSF issued amendment No. 6 to the RFP that postponed the period of performance by 4-1/2 months. Period of performance is a material solicitation requirement. Development Assocs., Inc., B-188416, Aug. 1, 1977, 77-2 CPD ¶ 64 at 3; see Logitek, Inc., B-238773, July 6, 1990, 90-2 CPD ¶ 16 at 4, recon. denied, B-238773.2, Nov. 19, 1990, 90-2 CPD ¶ 401 (delivery terms are a material requirement in a solicitation). Because IBS did not confirm its initial proposal or otherwise acknowledge amendment No. 6, IBS was not bound to a material requirement of the solicitation and its initial proposal thus was unacceptable. S.C. Myers & Assocs., Inc., B-286297, Dec. 20, 2000, 2001 CPD ¶ 16 at 4.

---

[1] The record is unclear regarding whether the agency received the second e-mail at 10:32 a.m. or 10:33:08 a.m. In either case, NSF received a material portion of IBS's FPR after the deadline.

[2] IBS asserts that NSF should accept its FPR under FAR § 15.208(b)(1)(ii), which provides an exception for late proposals when there is evidence establishing that the government had control of the submission at the time set for receipt of proposals. IBS offers no evidence to support this assertion. Instead, as noted above, the record indicates that NSF received a material portion of IBS's FPR after the deadline.

IBS points out that while NSF's amendment postpones the period of performance by 4-1/2 months, it does not change the overall length of the performance period. IBS argues that its initial proposal commits to the same overall period of performance, and, therefore, should be considered acceptable. IBS's argument ignores two points: first, that shifting the period of performance could affect how offerors structure their proposals, depending on their particular circumstances, and, second, that IBS has not committed to perform past the original completion date, as the agency requires.

IBS asserts that it did confirm its initial proposal--once, orally, on March 13, and again, in writing, by its letter of March 21. NSF disputes the oral confirmation, and maintains that, in either case, the confirmations were untimely. IBS argues that its confirmations were not untimely because NSF's request for FPR provided no deadline for confirmation.

As explained above, by letter dated March 10 NSF gave offerors an opportunity to submit FPRs. The letter set March 13 at 10:30 a.m. as the deadline for submissions. In pertinent part, that letter provided as follows: "You are advised that any changes to your proposal that you wish to be considered by NSF must be identified within the text of your FPR. If no revisions are made to your original offer, confirm that the offer remains unchanged." Read in context and as a whole, the only reasonable interpretation of NSF's request for FPRs is that if an offeror chose to confirm rather than revise its proposal, the confirmation was due by the deadline for FPRs. See Robotic Sys. Tech., B-271760, May 14, 1996, 96-1 CPD ¶ 229 at 3 (only reasonable interpretation of amendment closing discussions and requesting BAFOs is that agency must receive offeror's confirmation by deadline for BAFOs); Department of the Army--Recon., B-251527.3, Sept. 17, 1993, 93-2 CPD ¶ 178 at 3-4 (agency must receive BAFO or confirmation of initial proposal by deadline for BAFOs). IBS's open-ended interpretation of NSF's request for FPRs would lead to the illogical conclusion that different offerors had different deadlines. In other words, those offerors choosing to revise their proposals were required to do so by the deadline for FPR; but those offerors choosing to confirm their initial proposals were not subject to a deadline.

Such an interpretation would clearly be inconsistent with the message conveyed by NSF's letter. Namely, NSF had closed discussions; NSF set a deadline for receipt of revisions or confirmations; and, when the deadline expired, NSF would evaluate the pool of timely FPRs and confirmed initial proposals. This course of action was consistent with FAR § 15.307(b), requiring establishment of a common cut-off date for receipt of FRPs, and previous decisions by this Office.

In any event, we think that IBS's submission of an FPR effectively revoked its initial proposal. Submission of an FPR generally demonstrates an offeror's intent to modify or replace its initial proposal, thus extinguishing an agency's ability to accept the earlier offer. See Touchstone Textiles, Inc., B-272230.4, Sept. 5, 1996, 96-2 CPD ¶ 107 at 2 (once offeror submits BAFO, award must be based on BAFO, not prior version

of proposal). Here, IBS asserts that it conditioned its submission of the FPR on the outcome of its request for a deadline extension. Therefore, in IBS's view, its submission of an FPR does not show an intent to revoke or modify its initial proposal because IBS did not intend for the FPR to be submitted if NSF denied the extension.

We find this argument unpersuasive. First, IBS fails to recognize that NSF's request for FPRs did not give offerors the option of both submitting a FPR and confirming initial proposals. Second, IBS never attempted to withdraw the submission of its FPR. To the contrary, the record indicates that throughout this dispute IBS has urged NSF to consider its FPR as a timely, valid offer. Thus, the intent implicit in IBS's express requests to NSF operates to revoke IBS's initial proposal. Id.

IBS failed to follow NSF's ground rules for continued participation in this procurement. IBS neither confirmed its initial proposal by the deadline, nor did IBS submit its FPR by the deadline. Because IBS's FRP was late, and because IBS's initial proposal failed to meet a material requirement, NSF did not have before it an acceptable IBS proposal to consider.

The protest is denied.

Anthony H. Gamboa
General Counsel