# Request For Reconsideration

# of Integrated Business Solutions, Inc. to

# GAO's July 9, 2003 Decision

# in

# Protest No. B292239

# TABLE OF CONTENTS

I. NONE OF THE REASONS OFFERED BY THE GAO'S JULY 9 DECISION JUSTIFY NSF'S ACTIONS IN THIS CASE.

A. IBS's Original Offer Is An Otherwise Successful Proposal That Is Capable Of Being Accepted.

1. This Contract's 3-Year Term Is Well Within IBS's 7-Year Period Of Commitment.

2. The Agency's Solicitation Expressly Allows Offerors To Stand By Original Offers, Which Necessarily Could Not Address Amendment #6.

B. IBS Confirmed Its Original Offer A Mere 7 Days Before The FPR Deadline And Repeatedly Confirmed It Thereafter.

1. The Solicitation Sets No Deadline For Confirmation of Original Offers.

C. IBS' FPR Submission Did Not Revoke Its Original Offer In Light Of IBS's Explicit And Repeated Expressions Of Contrary Intent.

**Keith Calhoun-Senghor, Esq.**
**Counselor at Law**
1429 Madison St., N.W.
Washington, D.C. 20011
Tel: 202/425-4968
Fax: 202/291-4891

July 18, 2003

Tania Calhoun, Esq.
Deputy Assistant General Counsel
Office of the General Counsel
U.S. General Accounting Office
441 G Street, N.W., Room 1139
Washington, DC 20548
ATTN: Procurement Law Control Group

Subject: Request for Reconsideration by Integrated Business Solutions, Inc. of GAO's July 9, 2003 Decision in Protest No. B-292239

Dear Ms. Calhoun:

Integrated Business Solutions, Inc. ("IBS") respectfully files this timely request for reconsideration of the GAO's July 9, 2003 decision in Protest No. B-292239 ("GAO July 9 Decision"), pursuant to 4 C.F.R. 21.14.

The GAO's July 9, 2003 decision sets forth three grounds for upholding the agency's decision not to consider IBS's original offer for award:

1. The original offer did not address issues contained in Amendment #6;

2. The original offer was not confirmed in a timely manner; and

3. IBS's FPR attempt revoked its original offer.

However, the factual record and the law do not support these reasons. Therefore, the agency's actions are arbitrary, capricious, an abuse of discretion, and not in accordance with law pursuant to 28 U.S.C. Sec. 1491(b)(1) and 5 U.S.C. Sec. 706(2)(a).

For these and other reasons discussed in its earlier submissions, IBS respectfully requests that this decision be modified or reversed and that IBS's original offer be ruled eligible for award. IBS further requests that any contract award be delayed pending the final determination of this protest, and that NSF be assessed costs, attorney's fees, and any other relief deemed just.

I. NONE OF THE REASONS OFFERED BY THE GAO'S JULY 9 DECISION JUSTIFY NSF'S ACTIONS IN THIS CASE

A. IBS's Original Offer Is An Otherwise Successful Proposal That Is Capable Of Being Accepted.

1. This Contract's 3-Year Term Is Well Within IBS's 7-Year Period Of Commitment.

The GAO's July 9 Decision notes that Amendment #6 to the Solicitation postponed the period of performance by four and a half months. It also claims that the revised period of performance contained in Amendment #6 is a material requirement, and that IBS did not acknowledge Amendment #6 or commit to perform past the original completion date, as the agency required. Therefore, it argues, IBS was not bound by a material requirement of the Solicitation and its original offer was unacceptable. GAO July 9 Decision pp. 3-4.

However, the three-year period of performance described in Amendment #6 is well within the seven-year period committed to by IBS in its original offer.

Amendment #6 shifts the period of performance of the contract forward four and a half months. However, the contractual term is three years, not seven. Amendment #6 reads in relevant part:

> This contract shall commence on April 1, 2003, and shall expire on March 31, 2006.

This language amends Section F2 of the Solicitation that originally stated: "This contract shall commence on November 15, 2002, and shall expire on November 14, 2005."

Thus, the amended three-year contractual period is well within the seven-year commitment period contained in IBS's original offer.

The rest of amended Section F2 describes an incentive program through which contractors may earn additional years based on their performance and consent. However, additional years are contingent on the contractor's performance <u>and agreement to perform in these additional periods</u>. Therefore, incentive years are clearly outside the three-year contract term and no contractor is <u>required</u> to perform them. Amended Section F2 reads in relevant part:

> As an incentive to improve the quality and effectiveness of the work performed the Contractor <u>may</u> earn additional performance periods as described in the clause titled Award Term. Should the Contractor earn <u>and elect to perform in the additional periods</u>, the contract's period of performance shall be extended by twelve (12) months for each of the periods earned, and shall expire March 31,

> 2007; March 31, 2008; March 31, 2009; and March 31, 2010 respectively. (Emphasis added).

The elective nature of these incentive years is also described in Section H8.5 of the Solicitation. That section reads in pertinent part:

> If the ATDO determines that the Contractor is entitled to additional contract term, the Contractor must indicate its acceptance in writing within fifteen (15) calendar days of notification. Absent the Contractor's acceptance within the fifteen-day period, the Contractor will be considered to have declined the additional contract term and the contract will expire at the completion of the period following the one under evaluation. (Emphasis added).

Therefore, all incentive years are at the election of the contractor. Optional contractor incentives can hardly be called a "material requirement" that must be committed to, when the Solicitation expressly defines them outside the term of the contract and makes them an election of the contractor.

Therefore, the change in the contract period cannot be a basis for excluding IBS's original offer from consideration.

2. The Agency's Solicitation Expressly Allows Offerors To Stand By Original Offers, Which Necessarily Could Not Address Amendment #6.

Moreover, nowhere in the Solicitation does the agency require offerors to amend their offers to reflect Amendment #6. Indeed, the Solicitation states just the opposite. In the same March 10 Letter that introduced Amendment #6, the agency explicitly allows offerors to stand by their original offers. In fact, these two sentences follow each other in the same paragraph. NSF March 10 Letter.

The alleged "material requirements" in Amendment #6 were well known to the agency when it expressly allowed offerors to stand by their original offers. To now disqualify an offeror for taking the agency at its word is a direct violation of the terms of the Solicitation. It is also arbitrary, capricious, an abuse of discretion, and not in accordance with the law. See Dubinsky v. United States, 43 Fed. Cl. 243 (1999)(agency's actions found to be arbitrary and capricious where it failed to follow rules set out in its own Solicitation); Logitek, Inc., B-238773, July 6, 1990, 90-2 CPD ¶ 16 (where solicitation conditions were unfairly relaxed for one offeror after award, without giving an opportunity for others to respond; "Award must be based on the requirements stated in the solicitation.").

The agency should not be allowed to announce that it will evaluate original offers for award, and then disqualify an offer from further consideration on the grounds that it is an

original offer.

Therefore, IBS's failure to address Amendment #6 cannot be a legitimate basis for excluding IBS's original offer from consideration.

B. IBS Confirmed Its Original Offer A Mere 7 Days Before The FPR Deadline And Repeatedly Confirmed It Thereafter.

1. The Solicitation Sets No Deadline For Confirmation of Existing Offers

The GAO's July 9 Decision concedes that the agency's Solicitation sets no explicit deadline for confirmations. Nevertheless, it found that "read in context and as a whole, the only reasonable interpretation" of the agency's March 10 letter is that confirmations were due by the FPR deadline. GAO July 9 Decision at 4.

The problem is that nowhere in the agency's Solicitation is a confirmation deadline ever mentioned. To arrive at their conclusion, the agency must read a specific and significant deadline into a letter that is simply silent on the subject.

NSF's letter is not unclear. The plain language of its letter is easily understood. The letter is neither contradictory on its face, nor in conflict with the plain language of the rest of the Solicitation. The letter is simply silent as to any confirmation deadline. The letter is also silent as to the form confirmations must take and to whom confirmations must be given. The letter is also silent as to the consequences of failing to meet this unspoken deadline.

The agency would read its silent draftsmanship on this issue as implying only one possible meaning. However, agencies do not typically "imply" their deadlines. The common practice is to state them clearly and explicitly. The common practice also is to state clearly the consequences of failing to meet that deadline. Compare J. W. Bateson Co., Inc. v. United States, 196 Ct. Cl. 531, 542, 450 F.2d 896 (1971)(contractor's interpretation of agency-drafted ambiguity upheld and "buttressed by uncontroverted trade practice"); W. H. Edwards Engineering Corp. v. United States, 161 Ct. Cl. 322 (1963)(ambiguous language drafted by the agency was construed against the drafter; agency interpretation at odds with customary and ordinary practice), with Environmental Control Division, Inc., B-255181, February 16, 1994, 94-1 CPD ¶ 115 (offerors explicitly required to confirm acceptance of new requirement by BAFO deadline) and Robotic Systems Technology, B-271760, May 14, 1996, 96-1 CPD ¶ 229 (where a specific deadline was set for confirmation of existing offers). In this case, the agency was simply silent.

Had NSF intended to include a confirmation deadline, especially one with such draconian contractual implications, the cases show that the government knows, or should have

known, how to write such language. See Robotic Systems Technology, B-271760, May 14, 1996, 96-1 CPD ¶ 229 (where a specific deadline was set for confirmation of existing offers; "[W]e disagree with Robotic that the RFP did not state a date by which an offeror's confirmation of its offer must be submitted under the agency's request for BAFOs. [O]fferors were informed that negotiations would close and BAFOs were due February 29, 1996, and that 'offerors who do not intend to modify their original offer, but who do want to be considered for award, must confirm their offers by responding to this request for [BAFOs] to remain in consideration for award."); Environmental Control Division, Inc., B-255181, February 16, 1994, 94-1 CPD ¶ 115 (offerors explicitly required to confirm acceptance of a new requirement by BAFO deadline). See also Dubinsky v. United States, 43 Fed. Cl. 243 (1999)(where an agency failed to notify offerors of the procedures it was applying because the FAR did not require notification; "In the court's view, however, making offerors aware of the rules of the game in which they seek to participate is fundamental to fairness and open competition. Providing offerors with notice [of the procedures being used] has the secondary benefit of avoiding unnecessary bid protest actions that challenge an agency's failure to comply [with the terms of its solicitation]....These protests--which presumably would not arise if contractors and the Government were reading from the same page--divert the resources of contractors, agencies and the judiciary.").

Moreover, the agency would construe their silence against IBS. This silence was introduced by the agency. The agency should not be allowed to provide a late and self-serving interpretation of its own silent draftsmanship. See H & M Moving, Inc. v. United States, 204 Ct. Cl. 696, 499 F.2d 660 (1974)(contract language drafted by agency capable of being interpreted at least two reasonable ways is ambiguous and should be construed against the drafter); J. W. Bateson Co., Inc. v. United States, 196 Ct. Cl. 531, n. 17, 450 F.2d 896 (1971), quoting WPC Enterprises, Inc., 163 Ct. Cl. at 6, 323 F. 2d at 877 ("Although the potential contractor may have some duty to inquire about a major patent discrepancy, or obvious omission, or a drastic conflict in provisions [citations omitted], he is not normally required (absent a clear warning in the contract) to seek clarification of any and all ambiguities, doubts, or possible differences in interpretation. The Government, as the author, has to shoulder the major task of seeing that within the zone of reasonableness the words of the agreement communicate the proper notions--as well as the main risk of failure to carry that responsibility. If the [agency] chafes under the continued application of this check, it can obtain a looser rein by a more meticulous writing of its contracts and especially of the specifications."); W. H. Edwards Engineering Corp. v. United States, 161 Ct. Cl. 322 (1963)(contract's silence as to one point created ambiguity that must be construed against the agency that drafted it).

In this case, there is only one truly reasonable interpretation of the agency's silence. The offeror's reasonable, good faith interpretation was that the agency set no specific time or manner for confirmations because NSF already had all initial offer in its possession for almost seven months--since August 2002. The agency had evaluated and ranked offers months ago. Moreover, Section A2 of the Solicitation states that contract award will be

based on initial offers, which were submitted in August 2002. Therefore, it was reasonable to assume that after seven months of waiting, minutes were not essential to the agency in learning which original offers, if any, were being confirmed. The offeror believed that confirmations must occur within a reasonable time. However, in this case, the agency is contesting a confirmation given within minutes of the agency's silent, unwritten deadline.

The offeror's interpretation is supported by the fact that just seven days earlier, on March 6, the offeror met personally with the agency's contracting representatives to clarify, and thus confirm, its original offer.

IBS, once again, confirmed its original offer at the time it delivered its FPR. The fact that it confirmed again with the agency in this manner demonstrates that IBS obviously believed in good faith that this was a legitimate option described by the Solicitation. See H & M Moving, Inc. v. United States, 204 Ct. Cl. 696, 499 F.2d 660 (1974)(contract language drafted by the agency capable of being interpreted at least two reasonable ways is ambiguous and should be construed against the drafter). Moreover, the agency's contracting representatives did nothing to dispute IBS's interpretation at the time it was made. As the GAO noted in PBM Construction, Inc., B-271344, May 8, 1996, 96-1 CPD ¶ 216: "In these circumstances, we fail to see how acceptance of [the winning bidder's] bid could be considered detrimental to the integrity of the competitive bidding system."

Allowing IBS's original offer to be considered under these circumstance furthers the interests of justice. In light of the agency's silent deadline, IBS's personal confirmation just seven days earlier, the language of Section A1 basing contract award on original offers, and the fact that IBS's second confirmation was within minutes of the agencies silent deadline, this case is unique and deserving of special consideration. Moreover, allowing this offer to remain eligible for award, given the specific circumstances of this case, does nothing to open agency floodgates to cases involving fair and specific deadlines.

As the Court of Claims noted in H & M Moving, Inc.:

> Certainly, the ambiguity complained of here was not patent, which is to say, obvious, gross, glaring, so that plaintiff contractor had a duty to inquire about it at the start. We have here only such an ambiguity, latent in character, as to require that it be construed against the author--here the [agency]--when the other party construes it in a reasonable manner, i.e., in the "zone of reasonableness." In employing such a sensible and proven doctrine, the courts and the board have determined that the behavior of the contractor is the key element in the *contra proferentem* situation....This is because the doctrine, by its very nature, implies and contemplates a contractor who has no duty to inquire of the government about the meaning of the language used in the contract. That duty arises only when the contract is patently ambiguous. If the contractor's behavior has been within the

> zone of reasonableness and the language is latently ambiguous, the contractor is not on notice that his interpretation might be wrong and that he is required to inquire.

Id. at 204 Ct. Cl. 716-717.

IBS's reasonable interpretation of this silence is supported by other sections of the Solicitation. Section A1 of the Solicitation makes it clear that original offers will be the basis for contract award. It reads in relevant part:

> This solicitation includes FAR Provision 52.215-1, titled *Instructions to the Offerors – Competitive Acquisition*, which notifies all parties that the Government intends to evaluate proposals and award a contract without discussions with offerors (except for clarifications as described in Far 15.306(a)). Accordingly, the offeror's initial proposal should contain the offeror's best terms from a price and technical standpoint. (Emphasis added).

FAR 52.215-1(f)(4), which was incorporated into the Solicitation by Section A1, reads:

> The Government intends to evaluate proposals and award a contract without discussion with offerors (except clarifications as described in Far 15.306(a)). Therefore the offeror's initial proposal should contain the offeror's best terms from a cost or price and technical standpoint. (Emphasis added).

Therefore, offerors submitted their original proposals with the understanding that those offers would be evaluated for final award. The offeror's initial proposal was timely submitted and properly before the agency for almost seven months. The offeror personally confirmed its offer just one week before the FPR deadline. The agency should not now be able to ignore the express terms of its Solicitation and claim that a confirmed original proposal cannot be the basis for award. See Pressman v. United States, 33 Fed. Cl. 438, 443 (1995), quoting Heyer Products Co. v. United States, 135 Ct. Cl. 63, 140 F. Supp. 409 (1956)("In the context of a solicitation for bids, 'it is an implied condition of the request for offers that each of them will be honestly considered.'").

Other sections of the Solicitation support the fact that IBS's original offer remains before the agency and is fully capable of being accepted. For example, Standard Form 30, which accompanied all seven Amendments, contains three options for offerors to confirm receipt of the amendment: the first is by filling out Standard Form 30 and returning it to the agency, the second is by acknowledging receipt of the amendment on each copy of a subsequent offer submitted, and the third is by separate letter or telegram. In no case did the agency ever require acknowledgement by a subsequent offer.

This suggests that the agency was well aware that original offers could form the basis for award and, as stated in Section A1, that it never intended to require subsequent offers

from offerors.

The agency's March 10 Letter inviting FPRs cannot remove a valid, pending offer from consideration; certainly not given its total silence on this issue. Absent a clear expression of intent on the part of the offeror to revoke or withdraw its existing offer, as a matter of law, the agency has an offer before it that is capable of being accepted. See discussion in IBS April 28 Appeal of Agency Level Decision at pp. 5-9; and IBS June 7 Response to Administrative Report and Memorandum of Law at pp. 2-5. See also FAR 52.215-1(c)(3)(ii)(B)(v) (incorporated into the Solicitation), which defines the specific method by which proposals may be withdrawn from consideration ("Proposals may be withdrawn by written notice received at any time before award. Oral proposals in response to oral proposals may be withdrawn orally. Proposals may be withdrawn in person by an offeror or an authorized representative, if the identity of the person requesting withdrawal is established and the person signs a receipt for the proposal before award."). None of these actions was taken by IBS to withdraw its proposal.

Therefore, under the terms Section A1 and other provisions of the Solicitation, the agency knew, or should have known, that IBS's offer remains validly before it and that it is fully capable of being accepted. See PBM Construction, Inc., B-271344, May 8, 1996, 96-1 CPD ¶ 216 (where an original offer, still within its acceptance period, was followed by an unsuccessful bid modification attempt; the GAO found the original offer was not revoked by the attempted modification and was capable of being accepted by the Government).

The agency would arbitrarily construe its silence against the offeror even though the rest of its letter clearly demonstrates it can write detailed and explicit instructions when it wishes. See discussion in IBS June 7 Response to Administrative Report and Memorandum of Law at pp. 10-11.

The GAO's July 9 Decision also argues that different deadlines for FPRs and confirmations would be inconsistent with "the message conveyed by NSF's letter," FAR Sec. 15.307(b), and "previous decisions by this Office" which were not cited.

As discussed earlier, the "message conveyed by NSF's letter" is clear. Its plain language deals with FPR requirements. It is simply silent as to confirmation deadlines and the process for confirming original offers. Therefore, the clear message conveyed by NSF's letter is that FPR deadlines and procedures do not apply to the confirmation of original offers. This is particularly true for an agency that heard the offeror's clarifications and confirmation just four days earlier.

Similarly, FAR 15.307(b) is also silent as to confirmation deadlines. As the GAO's July 9 Decision notes, FAR 15.307(b) expressly limits itself to FPR cut-off dates. It reads in relevant part: "The contracting officer is required to establish a common cut-off date only for receipt of final proposal revisions." (Emphasis added). Nothing in FAR 15.307(b)

requires FPR and confirmation dates to be the same. In fact, the implication of this FAR language is that different cut-off dates may be set for matters other than FPRs, precisely because common cut-off dates are required only for FPRs.

This Solicitation contains no confirmation deadline, yet the agency has ruled IBS's repeated confirmations late. Offerors were explicitly allowed to have their original offers considered for award, yet IBS's original offer was disqualified precisely because it was an original offer .

And all this is to avoid considering an offer that was timely submitted, previously evaluated, and properly before the agency since August 2002.

Such agency action is arbitrary, capricious, unfair, and unsupported by the law. It is also a violation of the Competition in Contracting Act. See Chas. H. Tompkins Co. v. United States, 43 Fed. Cl. 716 (1999)(pre-award protest was upheld and procurement cancelled because overly restrictive conditions restrained competition in violation of the Competition in Contracting Act).

The offeror repeatedly confirmed its offer to the agency in a timely manner, and the Solicitation contains no confirmation deadline. Therefore, a late confirmation cannot be a legitimate basis for excluding IBS's original offer from further consideration.

C. IBS' FPR Submission Did Not Revoke Its Original Offer In Light Of IBS's Explicit And Repeated Expressions Of Contrary Intent.

GAO's July 9 Decision claims that IBS's FPR submission effectively revoked its initial offer. GAO July 9 Decision at 4-5. It states that the agency's Solicitation did not give offerors the option of both submitting a FPR and confirming an initial proposal. It also states that IBS never attempted to withdraw its FPR. "Thus, the intent implicit in IBS's express requests to NSF [to have its FPR considered] operates to revoke IBS's initial proposal." Id. at 5.

These conclusions are simply unsupported by the law or facts in this case. The undisputed record shows that IBS expressly and repeatedly notified the agency of its intent to have its original offer considered for award.

Moreover, it is well settled that an offeror must clearly intend to revoke its offer for it to be revoked. See discussion in IBS April 28 Appeal of Agency Level Decision at pp. 5-9; and IBS June 7 Response to Administrative Report and Memorandum of Law at pp. 2-5. See also Restatement of Contracts 2d, § 35 (1981) (Offeree's Power of Acceptance: "An offer gives to the offeree a continuing power to complete the manifestation of mutual assent by acceptance of the offer.") and § 36 ("Methods of Termination of the Power of Acceptance;" power of acceptance may be terminated only by a rejection or counter offer

by the offeree, lapse of time, revocation by the offeror, incapacity of offeror or offeree, or non-occurrence of a condition of acceptance contained in the terms of the offer).

In light of the offeror's expressed contrary intent, its FPR attempt does not revoke its existing valid offer. PBM Construction, Inc., B-271344, May 8, 1996, 96-1 CPD ¶ 216. Indeed, the facts of this case so clearly demonstrate an explicit and repeated intent not to revoke the original offer, that serious discussion of this point should be no longer necessary. See discussion in IBS June 7 Response to Agency Administrative Report and Memorandum of Law at pp. 5-7; and IBS April 28 Appeal of Agency Level Decision at pp. 5-9. IBS's original offer is, therefore, an otherwise successful proposal eligible for award.

Surprisingly, the GAO's July 9 Decision fails to even mention PBM Construction, Inc., B-271344, May 8, 1996, 96-1 CPD ¶ 216, a strikingly analogous case that arrives at exactly the opposite conclusion as this case. Nor does the July 9 Decision address any of the substantial factual and legal distinctions between this case and several of the cases it relies on, notably, Touchstone Textiles, Inc., B-272230.4, September 5, 1996, 92-2 CPD ¶ 107 and Department of the Army—Reconsideration, B-251527.3, September 17, 1993, 93-2 CPD ¶ 178. See discussion in IBS June 7 Response to Agency Administrative Report and Memorandum of Law at pp. 2-5; and IBS April 28 Appeal of Agency Level Decision at pp. 5-9.

For these and other reasons discussed in its earlier submissions, IBS respectfully requests that this decision be modified or reversed and that IBS's original offer be ruled eligible for award. IBS further requests that any contract award be delayed pending the final determination of this protest, and that NSF be assessed costs, attorney's fees, and any other relief deemed just.

Sincerely,

Keith Calhoun-Senghor, Esq.
for Integrated Business Solutions, Inc.

cc: David T. Truong, Esq., NSF Asst. Gen. Counsel
Mr. Carlton Joseph
Mr. Aubrey Stephenson

CERTIFICATION

I certify that on July 18, 2003, a copy of this document was sent via facsimile, and on July 19, 2003 via overnight mail to:

Tania Calhoun, Esq.
Acting Deputy Assistant General Counsel
Office of the General Counsel
U.S. General Accounting Office
441 G Street, N.W., Room 1139
Washington, D.C. 20548
ATTN: Procurement Law Control Group
(202) 512-9749 (fax)

and

David T. Truong, Esq.
Assistant General Counsel
Office of the General Counsel
National Science Foundation
4201 Wilson Boulevard
Arlington, Virginia 22230
(703) 292-9041 (fax)

Keith Calhoun-Senghor, Esq.
for
Integrated Business Solutions, Inc.